JACK P. DICANIO (SBN #138782)
jack.dicanio@skadden.com
ALLEN RUBY (SBN #47109)
allen.ruby@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue, Suite 1400
Palo Alto, California 94301
Telephone: (650) 470-4500
Facsimile: (650) 470-4570

BARRY SIMON (*pro hac vice* forthcoming)
bsimon@wc.com
JONATHAN B. PITT (*pro hac vice* forthcoming)
jpitt@wc.com
STEPHEN L. WOHLGEMUTH (*pro hac vice* forthcoming)
swohlgemuth@wc.com
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029

Attorneys for
MARC L. ABRAMOWITZ

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| *In re Ex Parte* Application of<br>PALANTIR TECHNOLOGIES INC.,<br><br>     Applicant,<br><br>For an Order Pursuant to 28 U.S.C. § 1782 to<br>Obtain Discovery from MARC L.<br>ABRAMOWITZ for Use in Foreign<br>Proceedings. | Case No.: 3:18-mc-80132-JSC<br><br>**MARC L. ABRAMOWITZ'S OPPOSITION TO PALANTIR'S *EX PARTE* APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 GRANTING LEAVE TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS** |

---

**ABRAMOWITZ'S OPP. TO *EX PARTE* APPLICATION**

**3:18-MC-80132-JSC**

# TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION ............................................................................................. 1

II.   FACTUAL BACKGROUND ......................................................................... 4

     A.    Marc Abramowitz's Relationship With Palantir ......................................... 4

     B.    Abramowitz Seeks to Investigate Palantir's Misconduct, and Palantir Tries to Discredit Abramowitz. ...................................................................... 6

     C.    The Delaware Court of Chancery Finds a Credible Basis to Infer That Palantir and Its Insiders Have Committed Wrongdoing, and Entities Related to Abramowitz Pursue a Tortious Interference Suit in Delaware Superior Court. ............................ 7

     D.    Palantir Files the California Complaint, but Discovery Is Stayed. ............................ 7

     E.    Palantir Is Compelled to Produce Books and Records for an Investigation. .............. 9

     F.    Palantir Files a Lawsuit in Germany Based on the Same Years-Old Allegations Underlying the California Case. ................................................ 10

     G.    Palantir Files Its § 1782 Application. . ............................................... 11

III.   ARGUMENT ................................................................................................. 12

     A.    Palantir's Application Should be Denied Because Palantir Is Acting in Bad Faith. 12

     B.    The *Intel* Factors Weigh Strongly Against Granting Palantir's Application. .......... 16

         1.    Abramowitz Is a Party to the German Lawsuit. ........................................ 17

         2.    The Character of the German Cases Abroad Weighs Strongly Against Granting § 1782 Discovery. ................................................................ 18

         3.    Palantir Seeks to Circumvent Foreign Proof-Gathering Restrictions, California Law, and U.S. Policy. . .............................................. 21

         4.    The Requested Discovery Is Unduly Burdensome. ................................... 22

IV.   CONCLUSION ............................................................................................. 24

i

# TABLE OF AUTHORITIES

## *CASES*

*Andover Healthcare, Inc. v. 3M Co.,*
   817 F.3d 621 (8th Cir. 2016) ..................................................................................17, 23

*In re Auto-Guadeloupe Investissement S.A.,*
   2012 WL 4841945 (S.D.N.Y. Oct. 10, 2012) ........................................................13

*Brae Transportation, Inc. v. Coopers & Lybrand,*
   790 F.2d 1439 (9th Cir. 1986) ..............................................................................20

*In re Cathode Ray Tube (CRT) Antitrust Litigation,*
   2013 WL 183944 (N.D. Cal. Jan. 17, 2013) ........................................................22

*In re Cathode Ray Tube (CRT) Antitrust Litigation,*
   2012 WL 6878989 (N.D. Cal. Oct. 22, 2012) ......................................................24

*Euromepa S.A. v. R. Esmerian, Inc.,*
   51 F.3d 1095 (2d Cir. 1995) ..................................................................................12

*In re Government of the Lao People's Democratic Republic,*
   2017 WL 2838051 (D. Idaho June 30, 2017) ..................................................13, 14

*Green Development Corp. S.A. De C.V. v. Zamora,*
   2016 WL 2745844 (S.D. Fla. May 10, 2016) ......................................................13

*Heraeus Kulzer, GmbH v. Biomet, Inc.,*
   633 F.3d 591 (7th Cir. 2011) ................................................................................18

*In re Hoteles City Express,*
   2018 WL 3417551 (N.D. Cal. July 13, 2018) ......................................................21

*Intel Corp. v. Advanced Micro Devices, Inc.,*
   542 U.S. 241 (2004) ..................................................................................... *passim*

*In re Judicial Assistance Pursuant to 28 U.S.C. § 1782 by Macquarie Bank Ltd.,*
   2015 WL 3439103 (D. Nev. May 28, 2015) ........................................................23

*Kim Laube & Co. v. Wahl Clipper Corp.,*
   2013 WL 12084741 (C.D. Cal. Mar. 8, 2013) ....................................................20

*Kiobel ex rel. Samkalden v. Cravath, Swaine & Moore LLP,*
   895 F.3d 238 (2d Cir. 2018) ............................................................................16, 23

*In re Kivisto,*
   521 F. App'x 886 (11th Cir. 2013) ......................................................................12

*In re Kreke Immobilien KG,*
   2013 WL 5966916 (S.D.N.Y. Nov. 8, 2013) ......................................................22

*KT4 Partners LLC v. Palantir Technologies, Inc.,*
   2018 WL 1023155 (Del. Ch. Feb. 22, 2018) ............................................. *passim*

ii

*KT4 Partners LLC v. Palantir Technologies, Inc.*,
    2018 WL 4033767. (Del. Super. Ct. Aug. 22, 2018) ............................................................ *passim*

*In re LG Electronics Deutschland GmbH*,
    2012 WL 1836283 (S.D. Cal. May 21, 2012) .............................................................................17

*Lu v. Dryclean-U.S.A. of Cal., Inc.*,
    11 Cal. App. 4th 1490 (1992) ...................................................................................................19

*Manetti-Farrow, Inc. v. Gucci America, Inc.*,
    858 F.2d 509 (9th Cir. 1988) ...................................................................................................19

*MetaLab Design Ltd. v. Zozi International, Inc.*,
    2018 WL 368766 (N.D. Cal. Jan. 11, 2018) .............................................................................23

*Microsoft Corp. v. Motorola, Inc.*,
    696 F.3d 872 (9th Cir. 2012) ...................................................................................................15

*Montebueno Marketing, Inc. v. Del Monte Foods Corp.-USA*,
    2012 WL 986607 (N.D. Cal. Mar. 22, 2012), *aff'd sub nom. Montebueno Mktg., Inc. v.*
    *Del Monte Corp.-USA*, 570 F. App'x 675 (9th Cir. 2014) ......................................................20

*Moon v. SCP Pool Corp.*,
    232 F.R.D. 633 (C.D. Cal. 2005) .............................................................................................24

*Nedlloyd Lines B.V. v. Superior Court*,
    3 Cal. 4th 459 (1992) ...............................................................................................................19

*In re O2CNI Co.*,
    2013 WL 5826730 (N.D. Cal. Oct. 29, 2013) ..........................................................................24

*Olinick v. BMG Entertainment*,
    138 Cal. App. 4th 1286 (2006) ..........................................................................................19, 20

*Parasoft Corp.* v. Parasoft S.A.,
    2015 WL 12645754 (C.D. Cal. Feb. 19, 2015) ........................................................................15

*Perlan Therapeutics, Inc. v. Superior Court*,
    178 Cal. App. 4th 1333 (2009) ..........................................................................................13, 22

*In re Pioneer Corp.*,
    2018 WL 2146412 (C.D. Cal. May 9, 2018) ............................................................................23

*In re Qualcomm Inc.*,
    162 F. Supp. 3d 1029 (N.D. Cal. 2016) ...................................................................................24

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP*,
    376 F.3d 79 (2d Cir. 2004) ......................................................................................................17

*Smith, Valentino & Smith, Inc. v. Superior Court*,
    17 Cal. 3d 491 (1976) ..............................................................................................................19

*Via Vadis Controlling GmbH v. Skype, Inc.*,
    2013 WL 646236 (D. Del. Feb. 21, 2013) ..........................................................................17, 23

*Winet v. Price*,
    4 Cal. App. 4th 1159 (1992) ........................................................................20

*In re WinNet R CJSC*,
    2017 WL 1373918 (S.D.N.Y. Apr. 13, 2017)......................................13, 14

*Younger v. Harris*,
    401 U.S. 37 (1971)..................................................................................22

### ***STATUTES***

28 U.S.C. § 1782 .......................................................................................... *passim*

Cal. Civ. Proc. Code § 1716(c)(1)(D) ...............................................................20

Cal. Civ. Proc. Code § 2019.210 .............................................................8, 9, 21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**ABRAMOWITZ'S OPP. TO *EX PARTE* APPLICATION**　　　　　　　　　　　**3:18-MC-80132-JSC**

1   Marc L. Abramowitz ("Abramowitz") respectfully submits this opposition to Palantir

2   Technologies Inc.'s ("Palantir") *Ex Parte* Application for an Order Pursuant to 28 U.S.C. § 1782

3   ("§ 1782") Granting Leave to Obtain Discovery for Use in Foreign Proceedings.

4   **I.      INTRODUCTION**

5          Palantir's application for discovery under § 1782 highlights the dangers of *ex parte* proceedings.

6   When one party believes it will be proceeding unopposed, the temptation to misrepresent the record can

7   be great.  Palantir gave in to that temptation here:  its *ex parte* application omits critical facts about the

8   status of a related case, the validity of the foreign proceedings for which it seeks discovery, and the true

9   purpose of its application.

10         In its *ex parte* application, which Abramowitz discovered only by happenstance, Palantir claims

11  to be seeking discovery for use in two German cases it has either brought, or plans to bring, against

12  Abramowitz.  But Palantir fails to disclose that, by filing the German cases and then immediately

13  seeking relief under § 1782, Palantir is trying to obtain discovery that a California state court has <u>twice</u>

14  <u>barred</u> Palantir from obtaining.  For the past two years, Palantir has attempted to pursue claims for

15  supposed breach of contract and misappropriation of trade secrets against Abramowitz and two related

16  entities in California Superior Court.  Palantir's German cases are based on <u>exactly</u> the same "facts" as

17  those alleged in the long-pending California case; and if Palantir were to prevail in the California case, it

18  would provide Palantir with <u>complete</u> monetary and injunctive relief (another fact Palantir neglects to

19  mention in its *ex parte* application).  Even though the California case has been pending for two years,

20  Palantir has been unable to describe the purported trade secrets allegedly misappropriated by

21  Abramowitz with "reasonable particularity," as is required by California law.  For that reason, the

22  California Superior Court has stayed discovery.  By filing a duplicative action in a German court, which

23  would not provide Palantir with the broad discovery it now seeks, and then immediately applying *ex*

24  *parte* for § 1782 discovery, Palantir is trying to circumvent the Superior Court's stay of discovery and

25  California law.

26         There is yet another material omission in Palantir's *ex parte* application.  In its California

27  complaint, Palantir alleges that the information it disclosed to Abramowitz was governed by certain

28  "Confidentiality Contracts," including a Preferred Stock Transfer Agreement from August 2012 (the

1

"2012 Transfer Agreement").

These material omissions (along with several others detailed below) show that Palantir has not been candid with this Court and is not acting in good faith. And Palantir's lack of candor with the Court is not the only indication of bad faith. That Palantir's duplicative German case was designed to harass and oppress Abramowitz is evident from the fact that for <u>years</u> Palantir has known about the international patent applications upon which its German suit is based. If Palantir actually had concerns about a purported need to protect its supposed European patent rights, it would have filed the German case at the same time it filed its lawsuit in California. But it did not. So where did Palantir's sudden urge to vindicate its supposed European patent rights come from? The litigation history between the parties (which Palantir omits from its *ex parte* application) speaks volumes on this question. Palantir only tried this German gambit <u>after</u> the California Superior Court twice rejected its attempts to describe its alleged trade secrets and <u>after</u> two Delaware state courts issued rulings that place Palantir and its insiders at significant risk of liability. Aware that its merits-based arguments have been unsuccessful, Palantir is now trying to bully Abramowitz and pressure him into dropping his significant claims against Palantir and its insiders. Because good faith is a prerequisite for relief under § 1782, Palantir's *ex parte* application should be denied.

There are several other grounds on which the Court should reject the application. In *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), the Supreme Court set forth four non-exclusive factors that courts should consider when entertaining § 1782 applications. Each weighs against Palantir's application.

*First*, Abramowitz is (or will be) a party to the German cases. The German court, which is fully capable of resolving the case that Palantir has chosen to bring, can decide what amount of discovery is appropriate. While Palantir clearly has complaints about the German court's discovery tools, those ring hollow in this case: Palantir <u>chose</u> to bring suit in Germany, even though it can (if it prevails) receive complete monetary and injunctive relief in California. Moreover, if Palantir's argument were accepted,

2

1  Abramowitz will seek reciprocal discovery.  This Court would then be put in the position of managing

2  discovery between two parties to litigation in California state court and in a German court.  That is not

3  what § 1782 was intended for.

4      *Second*, the character and stage of Palantir's German cases weigh against granting Palantir's

5  application. ███████████████████████████████████████████████████████

6  ████████████████████████████████████████████████████████████████████

7  ████████████████████████████████████████████████████████████  Moreover,

8  given the early stage of the German case, the German court has not yet weighed in on the validity of

9  Palantir's legal theory.  In these circumstances, this Court has recognized that an applicant must provide

10  the Court with some explanation of why it states a claim under foreign law.  Palantir has not done so.

11      *Third*, Palantir is trying to circumvent both German and U.S. law.  Palantir has filed nearly

12  identical suits in both California and Germany—but it is trying to use § 1782 to get more discovery than

13  either of those jurisdictions would allow.  Section 1782 cannot be used to circumvent the policies of

14  California or Germany in this way.  The circumstances, moreover, indicate that Palantir is trying to side-

15  step German discovery rules.  It has not even attempted to pursue any discovery using German

16  procedures, but it instead <u>immediately</u> sought § 1782 relief.  Litigants should not be incentivized to

17  manipulate the U.S. courts in this way.

18      *Fourth*, Palantir's discovery requests are unduly burdensome.  Its requests seek confidential

19  information from Abramowitz, without any sort of assurances that such information will be kept

20  confidential in the German case.  Several courts have rejected similar requests for confidential

21  information, given the reluctance of foreign courts (German courts in particular) to maintain

22  confidentiality.  Moreover, Palantir seeks documents covering an unnecessarily broad, nearly twelve-

23  year time period, and seeks documents that could only be relevant to the <u>California</u>, not German,

24  litigation.

25                    *         *         *         *

26      For these reasons, Palantir's *ex parte* application should be denied.  The Court should also be

27  aware that Abramowitz intends to raise similar arguments before the California Superior Court in a

28  forthcoming motion to enjoin Palantir from proceeding in Germany.  Specifically, Abramowitz will

3

1 argue that Palantir's bad-faith litigation conduct, its attempt to circumvent the Superior Court's

2 discovery orders, ███████████████████████████████ (as well as numerous other

3 factors, including the fact that the dispute is between a corporation headquartered in California and a

4 California resident, which Palantir initiated in California state court, where Palantir could obtain

5 complete relief, if it were entitled to any) should lead the Superior Court to grant relief.  This Court may

6 therefore want to refrain from resolving Palantir's § 1782 application until the Superior Court has had a

7 chance to address these issues, which concern litigation misconduct directed specifically at the Superior

8 Court.

9 **II.    FACTUAL BACKGROUND**[1]

10       **A.    Marc Abramowitz's Relationship With Palantir.**

11       In approximately 2003, Palantir's now-CEO Alex Karp met with Abramowitz to pitch a new

12 venture that ultimately would become Palantir.  *Chancery Opinion*, 2018 WL 1023155, at *2.

13 Abramowitz decided to invest in Palantir, through various entities, and over the next several years those

14 entities acquired more than 5.5 million shares of Palantir common and preferred stock.  *Id.*  For many

15 years, Abramowitz and Palantir were on good terms, and Abramowitz had reasonable confidence in the

16 company's management.  *Id.*  That said, Abramowitz tolerated many issues with Palantir—for one thing,

17 the company provided essentially no information about its governance, financial performance, or even

18 whether it was complying with its shareholder contracts.  *See id.* at *12-15.

19       But things changed in 2015.  The first sign of trouble came in May 2015, after Abramowitz

20 negotiated a deal to sell a block of Palantir stock to a buyer named Highbridge Capital.  *Delaware*

21 *Superior Court Opinion*, 2018 WL 4033767, at *3.  Before the deal could close, Abramowitz was

22

23 ---

[1] This factual background is principally drawn from two decisions involving entities related to
24 Abramowitz and Palantir.  The first is *KT4 Partners LLC v. Palantir Techs., Inc.*, 2018 WL 1023155, at
*2 (Del. Ch. Feb. 22, 2018) (the "*Chancery Opinion*"), a "books and records" case in which the
25 Delaware Court of Chancery granted judgment in KT4's favor after a one-day trial.  Abramowitz is the
managing member of KT4.  The second is *KT4 Partners LLC et al., v. Palantir Techs., Inc. et al.*, 2018
26 WL 4033767, at *1-2. (Del. Super. Ct. Aug. 22, 2018) (the "*Delaware Superior Court Opinion*"), in
which the Delaware Superior Court held that entities related to Abramowitz stated a claim for tortious
27 interference.  The *Delaware Superior Court Opinion* was decided at the motion-to-dismiss stage.  The
court accepted plaintiffs' allegations as true for purposes of its opinion and did not make any factual
28 findings.  *Id.* at *2 n.5.  Nevertheless, Abramowitz cites from the *Delaware Superior Court Opinion* so
that this Court can have the full context of the litigation between Abramowitz and Palantir.

**ABRAMOWITZ'S OPP. TO *EX PARTE* APPLICATION**                                      **3:18-MC-80132-JSC**

1   contractually required to give Palantir notice of the transaction. *Id.* at *2.  And so Abramowitz informed

2   Palantir of Highbridge's identity, the price, and the number of shares to be sold. *Id.* at *3.  Once Palantir

3   learned of these details, it immediately instructed one of its agents to contact Highbridge and to offer it

4   the opportunity to buy shares from Palantir, instead of Abramowitz's entities. *Id.*  Palantir's agent

5   followed those instructions:  the agent met with a principal at Highbridge and tried to convince him to

6   abandon his deal with Abramowitz. *Id.*  Highbridge rebuffed the overture, telling Palantir's agent that

7   Highbridge did not break deals. *Id.*  Ultimately, the Abramowitz-Highbridge transaction went through,

8   despite Palantir's conduct. *Id.*

9       In roughly that same time period, another incident made things worse.  Karp called Abramowitz

10  shortly before they were to meet for lunch and accused Abramowitz of stealing Palantir's intellectual

11  property and using it to file patent applications. *Chancery Opinion*, 2018 WL 1023155, at *5.

12  According to Abramowitz, Karp then "verbally abused" Abramowitz in a manner he described as

13  "irrational, somewhat unhinged, and completely contradictory to any relationship that [he] had had with

14  [Karp] in the past." *Id.* (alteration in original) (citing Abramowitz testimony).

15      At that point, after Palantir tried to steal the Highbridge deal and after being confronted with

16  baseless allegations of theft, Abramowitz decided that he could no longer stay a shareholder of Palantir.

17  Working through his broker, Abramowitz, along with several other Palantir shareholders, arranged to

18  sell his stock to CDH Investments, a Chinese investment company. *Delaware Superior Court Opinion*,

19  2018 WL 4033767, at *4.  Abramowitz had arranged to sell his entire position to CDH for over $64

20  million. *Id.*

21      But Palantir once again used the playbook from the Highbridge transaction:  after Abramowitz

22  and the other sellers notified Palantir of the deal, as they were contractually required to do, Palantir

23  instructed its agent to contact CDH and offer it a deal with Palantir, instead of Abramowitz and the other

24  sellers. *Id.*  Palantir's agent sent CDH the following message:

25      Sorry to reach out to you this way but I'm not sure exactly how best to reach out or who
        to at your firm. I represent Palantir Technologies in Palo Alto and have been asked by
26      the company to reach out to your firm as you guys demonstrated a level of interest in the
        company through a third party.  If this is not the case, I apologize. In any event, I would
27      appreciate a response back at your convenience so I can discuss the current offering,
        process and timing.
28

5

1  *Id.* (citation omitted).  Soon after that offer from Palantir's agent, CDH withdrew from its deal with

2  Abramowitz.  CDH stated that it was doing so because it wanted to pursue a deal with Palantir.  *Id.*

3  Since Palantir's interference with the CDH transaction, the market price for Palantir stock has

4  plummeted.  *Id.* at *4.

5  **B.**   **Abramowitz Seeks to Investigate Palantir's Misconduct, and Palantir Tries to Discredit Abramowitz.**

6  At that point, Abramowitz had become, in effect, an involuntary investor in Palantir.  Because

7  Palantir provided its investors virtually no information, Abramowitz, through an entity named KT4

8  Partners LLC, of which Abramowitz is the managing member, sent, in mid-August 2016, an information

9  request pursuant to an Investors' Rights Agreement.  *Chancery Opinion*, 2018 WL 1023155, at *5.  The

10  request sought financial and governance information, as well as information about potential misconduct.

11  *Id.* at *5 n.50.  Among other things, KT4 sought information about (1) the CDH interference and (2)

12  Palantir's and its insiders' compliance with shareholder contracts.  *Id.*

13  Upon receiving the request, one of Palantir's in-house lawyers told KT4 that "[Palantir] was

14  reviewing the request and would respond soon."  *Id.* at *5.  That was not true.  Palantir was instead

15  working on a three-pronged attack on Abramowitz.  In early-September 2016, Palantir (1) purported to

16  retroactively amend the Investors' Rights Agreement to strip KT4 of its right to information; (2) filed a

17  meritless lawsuit in California Superior Court, based on Karp's year-old allegations regarding

18  Abramowitz's patent applications; and (3) filed a meritless derivation proceeding before the USPTO.

19  *See id.* at *4-6; *see also* Palantir Mem. of P&A, at 7-8 (Dkt. 2).

20  In prior litigation with Palantir, the Delaware Court of Chancery described Palantir's conduct in

21  this regard, at least as it pertained to the retroactive amendments, as leading "KT4 to believe that it was

22  considering KT4's information request, and then pull[ing] the rug out from under KT4 . . . by

23  eviscerating its contractual rights to seek information."  *Chancery Opinion*, 2018 WL 1023155, at *13.

24  And while Palantir has tried to explain this conduct by claiming that it was trying to keep its confidential

25  information from Abramowitz, the Court of Chancery held that this explanation was disingenuous and in

26  fact gave the Court reason to "suspect wrongdoing" by Palantir:  "Had Palantir been primarily

27  concerned with Abramowitz obtaining confidential information, it could have denied certain requests

28

6

1  and at least made an effort to provide information regarding the non-sensitive topics." *Id.* (emphasis

2  added).

3         **C.**     **The Delaware Court of Chancery Finds A Credible Basis To Infer That Palantir**

4                **and Its Insiders Have Committed Wrongdoing, and Entities Related to Abramowitz**
              **Pursue a Tortious Interference Suit in Delaware Superior Court.**

5         After Palantir "pulled the rug out from under KT4," KT4 demanded to inspect Palantir's books

6  and records under a Delaware statute, 8 Del. C. § 220.  Palantir denied that demand in its entirety, and

7  KT4 filed suit, seeking, *inter alia*, information needed to investigate wrongdoing at Palantir.  *Id.* at *1.

8         After a one-day trial, the Delaware Court of Chancery entered judgment in favor of KT4.  *Id.* at

9  *1-2.  The Court found that KT4 had shown a credible basis to justify further investigation into three

10  areas:  (1) Palantir's "serial failures" to abide by Delaware General Corporation Law; (2) Palantir's

11  efforts to "eviscerate[]" shareholder information rights by retroactively amending the Investors' Rights

12  Agreement; and (3) Palantir's apparent violations of shareholder agreements, which arose out of, *inter*

13  *alia*, the undisclosed sales of over 100 million shares of stock by Palantir insiders.  *Id.* at *2, *11–15.

14  The Court ordered Palantir to produce books and records relating to these subjects so that KT4 could

15  conduct an investigation.  *Id.* at *18-19.  The Court denied KT4's other requests, including KT4's

16  request to investigate the CDH deal.[2]  The Court found that the CDH deal was not a "proper subject" of

17  a Section 220 investigation.  *Id.* at *2.  At oral argument, the Court advised KT4 that it should file a

18  tortious interference claim and propound discovery if it wanted to investigate the CDH deal.

19         KT4 has done so in Delaware Superior Court.  That Court recently denied Palantir's motion to

20  dismiss, and the case is proceeding.  *See Delaware Superior Court Opinion*, 2018 WL 4033767, at *1-2.

21         **D.**     **Palantir Files the California Complaint, but Discovery Is Stayed.**

22         In contrast to proceedings in Delaware, Palantir's effort to discredit Abramowitz in the

23  California action has been stalled.  In that suit, Palantir alleges that Abramowitz, KT4, and the Marc

24  Abramowitz Charitable Trust No. 2 ("Defendants") obtained unspecified trade-secret information from

25  Palantir's officers and employees while subject to three "Confidentiality Contracts":  (1) the 2012

26  Transfer Agreement, (2) an NDA dated July 12, 2014, and (3) a Preferred Stock Transfer Agreement

27  ───────────────

28  [2] KT4 has pursued an appeal with respect to some of these requests.

**ABRAMOWITZ'S OPP. TO *EX PARTE* APPLICATION**                                     **3:18-MC-80132-JSC**

1  dated June 17, 2015.  See Ex. A[3] (Second Amended Complaint) ¶¶ 30, 31, 32.  According to Palantir,

2  the information disclosed to Abramowitz relates to technologies for "interpreting and analyzing data"

3  and the "trade secret business plans and customer lists related to these technologies." *Id.* ¶ 19.

4  Although Palantir's complaint makes no effort to describe what sort of "data" and "trade secrets" it

5  alleges were stolen, it does put at issue three broadly described technologies:  (1) "Healthcare

6  Technology"; (2) "Cyber Insurance and Cybersecurity Technology"; and (3) "Natural Resources

7  Exploration Technology." *Id.* ¶¶ 42, 50, 55.  Palantir alleges that Defendants used that information

8  when "market[ing]" a competing business, filing patent applications with the USPTO, and disclosing the

9  information to unnamed "others." *See, e.g.*, *Id.* ¶¶ 42-44.  Palantir claims that these actions breached the

10  Confidentiality Contracts and violated the California Uniform Trade Secrets Act ("CUTSA").  *Id.* ¶¶ 70-

11  86, 95-104.  Palantir's complaint seeks all damages caused by Defendants' alleged disclosures of

12  information and a broad injunction barring Defendants from "directly or indirectly retaining, using or

13  disclosing Palantir's trade secret, confidential and/or proprietary information, and derivatives thereof."

14  *Id.*, Prayer For Relief ¶¶ 2(c), 6.  Palantir has contended that the relief it seeks would require Defendants

15  to "withdraw or amend their patent applications."[4]  *See* Plaintiff Palantir Techs. Inc.'s Reply in Support

16  of Motion to Remand and For Attorneys' Fees and Costs at 1, *Palantir Techs. Inc. v. Abramowitz et al.*,

17  16-cv-05857-PJH, (N.D. Cal. Jan. 30, 2017), Dkt. 31 at 1 [hereinafter "Palantir Reply ISO Motion to

18  Remand"].

19        Because Palantir filed suit under CUTSA, California law requires it to identify any allegedly

20  misappropriated trade secrets with "reasonable particularity" before it is entitled to seek discovery.  *See*

21  Cal. Civ. Proc. Code § 2019.210.  Even though it has had more than <u>three years</u> to get its story straight

22

23  [3] All citations to "Ex. __" refer to the exhibits to the Wohlgemuth Declaration filed contemporaneously

24  with this opposition.

25  [4] Defendants in the California action removed the case to this Court. *Palantir Techs. Inc. v. Abramowitz et al.*, 16-cv-05857-PJH, (N.D. Cal. Jan. October 11, 2016), Dkt. 1 (notice of removal).  The basis for

26  the removal was that, by challenging Abramowitz's status as the inventor of the U.S. patent applications, the California complaint raised an issue of U.S. patent law.  *Id.* at ¶ 1.  Palantir sought remand, *inter*

27  *alia*, on the grounds that its claims went "well beyond" the U.S. patent applications and that they covered all disclosures to "others".  *Palantir Techs. Inc. v. Abramowitz et al.*, 16-cv-05857-PJH, (N.D.

28  Cal. Jan. 30, 2017), Dkt. 31 at 7, 12.  This Court remanded the case. *Palantir Techs. Inc. v. Abramowitz*, 2017 WL 926467, at *1 (N.D. Cal. Mar. 9, 2017).

8

1  (over a year before filing suit and two years after filing suit), Palantir has failed to satisfy this threshold

2  requirement.

3  Twice, Palantir submitted purported trade secret disclosures.  Twice, the Superior Court found

4  that those disclosures did not satisfy the "reasonable particularity" requirement.  On the first occasion,

5  the Court found that Palantir's disclosure was "pretty general," full of "words that don't . . . say a lot,"

6  and did not "disclose anything secret."  *See* Ex. B at 10:6-11 (Transcript of Feb. 13, 2018 Proceedings).

7  Palantir's second attempt was no better:  it tried to satisfy the "reasonable particularity" requirement by

8  copy-pasting from <u>Abramowitz's</u> public patent applications.  The Court found that this sort of shortcut

9  did not comply with Section 2019.210:  the statute requires a plaintiff to supply its <u>own</u> narrative

10  description of the trade secrets as they existed at the time of the alleged misappropriation, which forces

11  plaintiffs to show the court that they have *prima facie* legitimate claims.[5]  *See* Ex. C (California Superior

12  Court order providing that "Palantir may not describe a trade secret with reasonable particularity by

13  quoting from or citing to one of Defendants' patent applications").

14  To this day, Palantir has been unable to identify any alleged trade secrets supposedly

15  misappropriated by Abramowitz with reasonable particularity, and the Superior Court's bar on Palantir

16  obtaining discovery remains in effect.

17  **E.      <u>Palantir Is Compelled to Produce Books and Records for an Investigation.</u>**

18  After the Delaware Court of Chancery's decision, Palantir began producing its books and records

19  for KT4's inspection.  KT4 was shocked by what it found.  In April 2018, KT4 began exchanging letters

20  with Palantir, in which it made clear to Palantir what KT4's investigation was uncovering:  for nearly a

21  decade, Palantir's founding shareholders have been using their positions at Palantir to enrich themselves

22  at stockholder expense.[6]  KT4 also made clear, in a July 16, 2018, brief filed with the Delaware Supreme

23  _____

24  [5] The California Superior Court formally entered its Order on August 31, 2018, but the Court stated that
    it was staying discovery during a hearing on May 18, 2018.  The delay was largely due to the meet and
25  confer process between Defendants and Palantir over the form of order.

26  [6] The letters are currently under seal in the first case pending before the Delaware Court of Chancery.
    KT4 describes their contents to the Court using language that it has already used in public filings and
27  that Palantir has declined to seal.  KT4, moreover, has filed a motion to compel Palantir's compliance
    with the Delaware Court of Chancery's final order; the motion is pending.  KT4 has also filed a second
28  books and records action in the Delaware Court of Chancery, seeking information relating to Palantir's
    valuation.

ABRAMOWITZ'S OPP. TO *EX PARTE* APPLICATION                                    3:18-MC-80132-JSC

1  Court, that it was investigating whether Palantir and its founding shareholders have defrauded Palantir's

2  other shareholders.  *See* Ex. D (excerpt from Delaware Supreme Court brief).

3       **F.    Palantir Files a Lawsuit in Germany Based on the Same Years-Old Allegations**
            **Underlying the California Case.**

4
5       Knowing that KT4 is likely to bring significant claims against Palantir and its founding

6  shareholders, and frustrated by its repeated failures in the California case, Palantir resorted to drastic

7  measures to try to gain leverage over Abramowitz:  on August 6, 2018, Palantir brought suit, without

8  notifying Abramowitz or his counsel, in German court seeking declaratory relief and damages related to

9  the Cyber Insurance and Cybersecurity Technology.  Waldeck Decl. at 3 ¶ 8 (Dkt. No. 4).  Apparently,

10 Palantir intends to file a second German action based on the Healthcare Technology, which is also at

11 issue in the California case.  *Id.* at 3 ¶ 9.

12      The German case(s) and the California case are based on the <u>same</u> alleged conduct that Palantir

13 has known about for years:  Palantir alleges that it shared confidential information with Abramowitz

14 while he was supposedly subject to the "Confidentiality Contracts" and that Abramowitz then disclosed

15 the confidential information to third parties.  Waldeck Decl., Ex. A at 5-7 (translation of German

16 complaint).  In the California case, the third parties are the USPTO and unnamed "others."  Ex. A ¶¶ 42-

17 44.  In the German case, the third party is the World Intellectual Property Organization, with which

18 Abramowitz filed international patent applications.  Waldeck Decl., Ex. B at 2 (translation of German

19 complaint).  The international patent applications and the USPTO patent applications are substantively

20 identical.  In fact, "[t]he entire content of [USPTO] patent application[s] [are] incorporated by

21 reference" in the international patent applications.  *See, e.g.*, Ex. E at 1 (international application for

22 "Dynamic Security Rating for Cyber Insurance Products"); *see also* Ex. F at 1 (corresponding USPTO

23 application which is substantively identical).  The international applications were published to the world

24 in <u>April and May of 2016</u>, at roughly the same time as the USPTO applications.  *See* Ex. E (international

25 application showing publication on April 28, 2016); *see* Ex. F (corresponding USPTO application

26 showing publication on April 21, 2106).

27      Palantir alleges that Abramowitz has abandoned the international applications and that this

28 abandonment occurred back in April 2017.  Waldeck Decl., Ex. A at 7-8 (translation of German

**ABRAMOWITZ'S OPP. TO *EX PARTE* APPLICATION**                    **3:18-MC-80132-JSC**

1  complaint). Palantir does not explain why it waited for the applications to be abandoned to file suit.

2  Indeed, Palantir seems to concede that this decision made its claims more difficult to bring. Waldeck

3  Decl., Ex. A at 3 (translation of complaint) (noting that German law typically requires "the pendency of

4  the European or national patent application).

5      **G.**    <u>**Palantir Files Its § 1782 Application.**</u>

6         Immediately after filing the German case, and again without notifying Abramowitz or his

7  counsel, Palantir filed the instant *ex parte* application under § 1782 for leave to take discovery from

8  Abramowitz in the U.S. The discovery Palantir seeks is the same discovery that Palantir sought in the

9  California Superior Court, but which is now covered by the stay of discovery. *See* Bukowski Decl., Ex.

10  A. The subpoenas seek documents and testimony going all the way back to 2007. *Id.* They also seek

11  discovery of confidential information, such as documents concerning any "ideas, concepts, systems,

12  methods, technologies, devices, computer programs, software or products described in the Challenged

13  Patents." *Id.* The subpoenas also seek information that could only be relevant to the California action,

14  such as documents relating to any "systems, methods, software, devices, computer programs, products

15  and/or technology <u>other than those described in the Challenged Patents</u> which Abramowitz has

16  invented." *Id.* (emphasis added).

17         Palantir's *ex parte* application is silent on several critical issues.

18         *First*, Palantir fails to disclose the California court's stay of discovery, which covers the very

19  materials that Palantir is seeking from this Court. Instead, Palantir's entire description of the California

20  case to this Court is that the "action . . . is pending." Mem. of P&A, at 7-8.



21

22

23

24

25

26

27

28

11



*Third*, Palantir fails to disclose that the damages it is seeking in the German case are subsumed within the damages it is seeking in the California case and that the California court could provide Palantir with complete monetary relief. Indeed, Palantir's *ex parte* application fails to attach a copy of the California complaint for the Court to review.

*Fourth*, Palantir fails to explain why the injunctive relief it seeks in California would not provide it with complete relief as to the international patent applications. After all, Palantir has claimed that the California injunction would require Defendants to "withdraw or amend their patent applications" that are pending before the USPTO. Palantir Reply ISO Motion to Remand at 1. Palantir never explains why similar actions with respect to the international applications would not provide Palantir with complete relief.

*Fifth*, Palantir fails to explain how it states a claim under German law with respect to an abandoned patent application. Palantir only describes the relief it is seeking, without providing the Court with any analysis on whether German law actually permits such relief. Mem. of P&A at 8.

## III.   ARGUMENT

### A.   Palantir's Application Should Be Denied Because Palantir Is Acting in Bad Faith.

Good faith is a prerequisite to relief under 28 U.S.C. § 1782. If a party seeks discovery in "bad faith" or "for the purpose of harassment," it is not entitled to discovery under § 1782. *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1101 n.6 (2d Cir. 1995); *In re Kivisto*, 521 F. App'x 886, 888-89 (11th Cir. 2013) (denying application for discovery sought "for vexatious purposes"). Palantir's application has been brought in bad faith and for the purpose of harassing Abramowitz. Its application should be denied.

12

1      *First*, courts have rejected § 1782 applications where the applicants misrepresent related actions.[7]

2   Here, Palantir has done exactly that:  it failed to disclose that the California court has <u>twice rejected</u> its

3   attempts to obtain any discovery on <u>exactly</u> the same issues raised in its subpoenas.  *See supra* at 10.

4   Instead, Palantir's only disclosure about the California state case was that it was "pending."  Mem. of

5   P&A, at 7-8.  That sort of "selective" disclosure is "inconsistent with the good faith requirements

6   imposed on Section 1782 applicants, especially those submitting requests on an *ex parte* basis."  *Green*

7   *Dev. Corp. S.A. De C.V. v. Zamora*, 2016 WL 2745844, at *5 (S.D. Fla. May 10, 2016).  And there

8   should have been no doubt that Palantir needed to disclose the California court's adverse rulings:

9   Palantir's allegations against Abramowitz, which were first brought in California court, pit a California-

10  headquartered corporation against a California resident over alleged actions that purportedly occurred

11  primarily in California.  California has an overriding interest in such a dispute, and California law

12  requires plaintiffs to describe their alleged trade secrets with "reasonable particularity" in order to

13  "dissuade[] the filing of meritless trade secret complaints" by illegitimate plaintiffs.  *Perlan*

14  *Therapeutics, Inc. v. Superior Court*, 178 Cal. App. 4th 1333, 1343 (2009) (citations omitted).  It would

15  be repugnant to notions of federal-state comity if Palantir could, with a federal court's assistance, use a

16  newly filed <u>German</u> proceeding to circumvent the protections of California law and to undermine the

17  authority of a California court overseeing a long-pending lawsuit.  *See infra* Argument, Section B.3.  Yet

18  Palantir decided not to disclose these adverse rulings in its *ex parte* application.  In these circumstances,

19  "it is difficult to draw any conclusion but that [Palantir] feared that a candid description of the litigation

20  would have undermined if not defeated its application."  *WinNet R CJSC*, 2017 WL 1373918, at *9.

21  Palantir's application must be rejected for this reason alone.

22   

23   

24   

---

[7]   *See, e.g., In re WinNet R CJSC*, 2017 WL 1373918, at *9 (S.D.N.Y. Apr. 13, 2017) (denying application for failure to "frankly or fully describe" adverse rulings); *Ex Parte Gov't of the Lao People's Democratic Republic*, 2017 WL 2838051, at *5 (D. Idaho June 30, 2017) (vacating § 1782 order where applicant "failed to disclose other, related proceedings [and] did so strategically"); *In re Application of Auto-Guadeloupe Investissement S.A., for an Order to Take Discovery Pursuant to 28 U.S.C. Section 1782*, 2012 WL 4841945, at *8 (S.D.N.Y. Oct. 10, 2012) (finding that applicant's omission of "critical information in its *ex parte* § 1782 Application" supported conclusion that applicant "may have acted in bad faith").

---



ABRAMOWITZ'S OPP. TO *EX PARTE* APPLICATION                    3:18-MC-80132-JSC

*Third*, the circumstances of Palantir's newly-filed German case show that it is brought to harass Abramowitz and to circumvent California law and the California court's stay of discovery.

- Palantir filed suit in California state court in September 2016, but Palantir does not explain why it waited until now—two years later—to file its German case, which is based on <u>exactly</u> the same alleged conduct. This timing alone is sufficient for the Court to infer that Palantir is a vexatious litigant. *See Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 886 (9th Cir. 2012) (affirming district court determination that subsequent German lawsuit was "vexatious or oppressive" when it was duplicative of prior, pending U.S. litigation between the same parties).

- The full context of the litigation underscores Palantir's bad faith: Palantir decided to file the German case only <u>after</u> the California court twice rejected its trade secret disclosure, and <u>after</u> KT4's tortious interference case and its investigation into broad misconduct by Palantir made significant headway. This conclusion is bolstered by the fact that Abramowitz's international applications have been public since <u>April 2016</u>. *See* Ex. E. If Palantir truly cared about its supposed European patent rights, it would have pursued them much earlier—and, at the latest, at the same time it pursued the California case. It would not have waited an additional two years beyond the filing of its California case to do so.



*(cont'd from previous page)*

ABRAMOWITZ'S OPP. TO *EX PARTE* APPLICATION                                    3:18-MC-80132-JSC

- Two of Palantir's three claims in the pending German case seek damages that are subsumed entirely within the damages it is seeking in the California case, where it has requested all damages caused by Abramowitz's alleged conduct. *See* Ex. A, Prayer for Relief. Palantir's third claim seeks a declaration that it, not Abramowitz, is the inventor of the technologies disclosed in the international patent application. That is <u>exactly</u> the same issue pending in the California court. *See, e.g.*, *id.* ¶ 49 (alleging that "Abramowitz misappropriated Palantir's inventions and trade secrets"). Palantir does not explain why a California judgment declaring it to be the inventor of the technologies, along with the broad injunctive relief it seeks—which it claims could cause Abramowitz to "withdraw or amend" his patent applications—would not provide Palantir full and complete relief. Indeed, Palantir's own German law expert recognizes that German courts could recognize such a judgment. Waldeck Decl. ¶ 15.

For these reasons, the Court should reject Palantir's *ex parte* application as having been brought in bad faith.

## B.    The *Intel* Factors Weigh Strongly Against Granting Palantir's Application.

A district court's assistance under § 1782 is discretionary, not mandatory. *Intel*, 542 U.S. at 244. Four non-exclusive factors from the Supreme Court's decision in *Intel* guide the analysis: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding";[10] (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign [tribunal] to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264-65. These factors "are not to be applied mechanically," and a district court may "also take into account any other pertinent issues arising from the facts of the particular dispute." *Kiobel ex rel. Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 245 (2d Cir. 2018).

Here, each *Intel* factor weighs in favor of denying Palantir's *ex parte* application.

---

[10] Palantir wrongly implies that the first *Intel* prong is "whether the discovery sought is within the jurisdiction of the foreign proceeding." Mem. of P&A, at 10.

ABRAMOWITZ'S OPP. TO *EX PARTE* APPLICATION                                    3:18-MC-80132-JSC

1.     <u>Abramowitz Is a Party to the German Lawsuit.</u>

The first *Intel* factor weighs strongly against Palantir because Abramowitz is a party to the dispute in Germany, although he has not yet been served with the complaint.  In these circumstances— "[w]hen the person from whom discovery is sought is a participant in the foreign proceeding"—"the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad," because a "foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence."  *Intel*, 542 U.S. at 264.

Palantir tries to overcome this fact by arguing that discovery from Abramowitz in Germany is unobtainable.  But German courts can order a party properly before it "to produce whatever evidence their laws require."[11]  *Via Vadis Controlling GmbH v. Skype, Inc.*, 2013 WL 646236, at *2 (D. Del. Feb. 21, 2013); *see also Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 85 (2d Cir. 2004) ("*Intel* suggests that because DT is a participant in the German litigation subject to German court jurisdiction, petitioner's need for § 1782 help is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad."); *In re Ex Parte LG Elecs. Deutschland GmbH*, 2012 WL 1836283, at *2 (S.D. Cal. May 21, 2012) ("Mitsubishi is the plaintiff in the German action. . . . LG has not explained why that information cannot be obtained from Mitsubishi in either lawsuit.").  And while Palantir complains about the German discovery regime, that is the balance struck by the German legal system, and comity demands respect for that balance when the foreign court has jurisdiction over the parties and can decide for itself whether discovery is appropriate.  *See Andover Healthcare, Inc. v. 3M Co.*, 817 F.3d 621, 623 (8th Cir. 2016) ("That this [German court] approach is more circumspect than American discovery does not dictate an order for discovery under § 1782(a).").  Moreover, the typical

---

[11] At one point, Palantir's *ex parte* application cites the declaration of its German law expert and claims that Abramowitz, even though he is a <u>party</u> to the German case, is "beyond the jurisdiction of the German Court."  Mem. of P&A, at 15 (citing Waldeck Decl. ¶ 4).  But the declaration says no such thing.  The cited paragraph only states: "Freshfields represents Palantir . . . in connection with litigation Palantir has already brought and will bring in the near future against Marc L. Abramowitz ('Abramowitz'), a citizen of the United States who resides [in San Francisco], in the Regional Court Munich 1 . . . ."  Waldeck Decl. ¶ 4.  The idea that a party to a lawsuit is "beyond the jurisdiction" of German courts is one that Palantir simply makes up.  In fact, Palantir's expert expressly contradicts this point later when he concedes that the German court could "request submission of documents particularly specified or referred by a party."  Waldeck Decl. ¶ 13.  To be clear, Abramowitz reserves all rights to challenge personal jurisdiction in Germany.

17

1  problem with German discovery, that the litigant must "identify [documents] specifically—individually,

2  not by category," should not be an issue for Palantir. *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d

3  591, 596 (7th Cir. 2011); *see also* Waldeck Decl. ¶ 13 (Palantir's German law expert recognizing that

4  German courts permit this procedure).  After all, Palantir has already specified certain of the documents

5  that it desires (e.g., Abramowitz's patent applications) and, if its theory of the case is to be taken

6  seriously, it should be able to specifically identify other documents that its employees purportedly

7  provided to Abramowitz.[12]  And Palantir's quibbles with German discovery procedures ring especially

8  hollow given that Palantir voluntarily chose to file suit there, even though it could receive complete

9  monetary relief in California.

10       Finally, it is worth noting the oddity of the procedural gambit Palantir proposes.  If the Court

11  grants the application, Abramowitz would of course seek reciprocal discovery from Palantir under

12  § 1782.  This Court would then be in the position of managing discovery between two <u>parties</u> to cases

13  pending in two <u>other</u> jurisdictions.  This very clearly is not what § 1782 was intended to accomplish.

14       The first *Intel* factor strongly favors denying Palantir's application.

15           2.    <u>The Character of the German Cases Abroad Weighs Strongly Against Granting
                   § 1782 Discovery.</u>

16

17  The second *Intel* factor, which looks to the character of the German case, weighs heavily against

18  granting Palantir's application.  Palantir has alleged that the disclosure of information to Abramowitz

19  was governed by three Confidentiality Contracts, including the 2012 Transfer Agreement.



27  ─────────────────────────

28  [12] Of course, in the California case, Palantir has been unable to specifically describe <u>any</u> of the information allegedly provided to Abramowitz.  But its failure shows that Palantir is not a legitimate trade-secrets plaintiff—not that it needs recourse to different discovery tools.



ABRAMOWITZ'S OPP. TO *EX PARTE* APPLICATION                                    3:18-MC-80132-JSC

1   Finally, as this Court has recently recognized, the early stage of the German case weighs against

2   granting the application, where, as here, the § 1782 applicant has "provided insufficient information for

3   the Court to determine whether it could actually state a claim . . . under [foreign] law." *In re Hoteles*

4   *City Express*, 2018 WL 3417551, at *3 (N.D. Cal. July 13, 2018). So far, the German court has taken no

5   action in Palantir's German case, as Abramowitz has yet to be served. Therefore, it is far from clear that

6   German law allows Palantir to challenge, and seek damages for, <u>abandoned</u> patent applications that

7   Palantir has long known about. The situation is similar to the one the Court recently faced in the *Hoteles*

8   case. There, an applicant sought pre-complaint discovery to pursue a defamation claim under Mexican

9   law. *Id.* at *1. Given the early stage, the Court rightly required information on "the law governing any

10  claim" to be brought by the applicant. *Id.* at *3. The result should be the same here, where Palantir

11  wants pre-complaint discovery for one case, and where the case that is pending has yet to receive any

12  judicial attention in Germany.

13      The character and nature of the foreign lawsuit giving rise to Palantir's § 1782 request weigh

14  strongly against granting Palantir's *ex parte* application.

15              3.    <u>Palantir Seeks to Circumvent Foreign Proof-Gathering Restrictions, California</u>
16                    <u>Law, and U.S. Policy.</u>

17      The third *Intel* factor, which asks whether discovery is being requested in bad faith, also weighs

18  heavily against Palantir. It is clear that Palantir is attempting to circumvent a California discovery

19  statute, the orders of a California state court, German fact-gathering procedures, and U.S. policy. In

20  fact, Palantir—which has voluntarily filed suit in California and Germany—is trying to use this Court

21  and § 1782 to get more discovery than either of those jurisdictions allows.

22      Palantir's application seeks to circumvent Section 2019.210 of the California Code of Civil

23  Procedure and the orders of the California state court. And Palantir is trying to manipulate the U.S.

24  court system: when confronted by a roadblock in the form of California law, the company filed an

25  ▉ lawsuit in Germany and then immediately tried to bootstrap its way into the U.S. federal

26  discovery regime. The consequences of allowing Palantir to do this would be grave, not only for the

27  policy of federal-state comity, but also because it would permit Palantir to subvert California law.

28      Section 2019.210 of the California Code of Civil Procedure requires plaintiffs alleging trade

21

1  secret misappropriation to provide a description of the trade secrets that were allegedly misappropriated

2  with "reasonable particularity."  This requirement is aimed at forcing a plaintiff to show the legitimacy

3  of its allegations:  if a plaintiff could just get a defendant's documents in discovery immediately after

4  filing its complaint, it would be able to claim that the things found there are its own "trade secrets."  *See*

5  *Perlan*, 178 Cal. App. 4th at 1343.  California's policy would be eviscerated if a plaintiff could use

6  litigation abroad, combined with § 1782, to obtain the defendant's documents for use when describing

7  its supposed trade secrets with "reasonable particularity" for purposes of Section 2019.210.  That is true

8  both in this case—as Palantir will no doubt use Abramowitz's testimony and documents when crafting

9  its Section 2019.210 disclosure—and more generally.  That result offends comity between federal and

10  state courts.  *Cf. Younger v. Harris*, 401 U.S. 37, 44 (1971) ("What [comity] represent[s] is a system in

11  which there is sensitivity to the legitimate interests of both State and National Governments, and in

12  which the National Government, anxious though it may be to vindicate and protect federal rights and

13  federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate

14  activities of the States.").

15       Palantir filed the German case <u>days</u> before seeking § 1782 relief from this Court, and Palantir has

16  not even tried to use any German evidence-gathering rules.  This timing indicates that Palantir is trying

17  to "side-step[] less-than-favorable discovery rules by resorting immediately to § 1782."  *In re Cathode*

18  *Ray Tube (CRT) Antitrust Litig.*, 2013 WL 183944, at *3 (N.D. Cal. Jan. 17, 2013).  It is true that an

19  applicant need not exhaust foreign discovery tools before turning to § 1782, but courts should

20  discourage parties (like Palantir) from "scurry[ing] to U.S. courts to preempt discovery decisions from

21  tribunals with clear jurisdictional authority."  *See In re Kreke Immobilien KG*, 2013 WL 5966916, at *6

22  (S.D.N.Y. Nov. 8, 2013).  "Exhaustion is one thing, but evasion is quite another."  *Id.*

23                  4.    <u>The Requested Discovery Is Unduly Burdensome.</u>

24       The fourth *Intel* factor also weighs against Palantir.

25       *First*, and most significantly, Palantir seeks discovery of confidential information from a nearly

26  twelve-year time period, some of which—by Palantir's own admission—bears no relation to the claims

27  in the German case.  *See* Bukowski Decl., Ex. A (subpoena seeking documents "concerning the

28  technology described in the Challenged Patents," as well as "systems, methods, software, devices,

22

1    computer programs, products and/or technology <u>other than those described in the Challenged Patents</u>

2    which Abramowitz has invented"). In a line of cases that Palantir fails to cite, courts recognize that, if a

3    § 1782 application seeks "highly sensitive" materials but fails to provide "certainty that . . .

4    confidentiality can be maintained," this factor weighs "heavily against ordering discovery." *Andover*

5    *Healthcare*, 817 F.3d at 623-24 (citation omitted). These concerns are particularly acute for litigation in

6    Germany, given that "there is no firm procedure in Germany to prevent disclosure to in-house

7    counsel . . . , that interested third parties may have access to the full case file, and that German courts do

8    not frequently grant requests to exclude confidential information from their decisions." *Id.* at 624; *see*

9    *also Via Vadis*, 2013 WL 646236, at *3 (holding that a request for confidential information for use in

10   German proceeding "counsels against granting the request"). Thus, even if Palantir were to agree to a

11   protective order in <u>this</u> § 1782 case,[15] "there is no evidence that a German court would obey such an

12   order." *In re Pioneer Corp. for an Order Permitting Issuance of Subpoenas to Take Discovery in a*

13   *foreign Proceeding*, 2018 WL 2146412, at *9 (C.D. Cal. May 9, 2018); *see also Kiobel ex rel.*

14   *Samkalden*, 895 F.3d at 247 (denying § 1782 application where the applicant could not provide "U.S.

15   courts with assurance that Dutch courts will enforce the protective orders that safeguard the

16   confidentiality of [the target's] documents"). This alone is enough to warrant rejection of Palantir's

17   application.

18        *Second*, Palantir's discovery requests are unduly burdensome. *See MetaLab Design Ltd. v. Zozi*

19   *Int'l, Inc.*, No. 17-mc-80153-MEJ, 2018 WL 368766, at *4 (N.D. Cal. Jan. 11, 2018) ("Discovery

20   requests must be 'proportional' considering 'the issues at stake in the action . . . the importance of the

21   discovery in resolving the issues, and whether the burden or expense of the proposed discovery

22   outweighs its likely benefit.'") (quoting Fed. R. Civ. P. 26(b)(1)).

23

24                                                            Moreover, "[r]ecent cases suggest that courts

25   should be more inclined to grant applications that seek either a single document or only those documents

26   relating to a particular event." *In re Judicial Assistance Pursuant to 28 U.S.C. 1782 by Macquarie Bank*

27

28   ---

[15] Of course, Palantir did not seek any protective order in its *ex parte* application.

23

1    *Ltd.*, 2015 WL 3439103, at *9 (D. Nev. May 28, 2015) (internal quotation and citation omitted).  Indeed,

2    the language of 28 U.S.C. § 1782(a) provides for the production of "a document," and elsewhere in that

3    same section it says "the document."  As this Court recognized, "[t]hat <u>singular</u> language suggests that

4    the statute was meant to encompass a very limited and specific item of discovery."  *In re Cathode Ray*

5    *Tube (CRT) Antitrust Litig.*, 2012 WL 6878989, at *3 (N.D. Cal. Oct. 22, 2012), *report and*

6    *recommendation adopted*, 2013 WL 183944 (N.D. Cal. Jan. 17, 2013).

7          Palantir's requests are anything but "limited" or "specific."  Palantir is using § 1782 to seek

8    broad discovery regardless of its relevance to its German patent lawsuit, including discovery dating back

9    nearly <u>12 years</u> and relating to technologies "other than those described in the Challenged Patents."  *See*

10   Bukowski Decl., Ex. A.  Given that Palantir's German litigation relates to two discrete technologies that

11   Palantir claims it shared with Abramowitz in <u>2014</u>, these sort of requests constitute precisely the kind of

12   "broad 'fishing expedition'" that is inappropriate under § 1782.  *In re Qualcomm Inc.*, 162 F. Supp. 3d

13   1029, 1043 (N.D. Cal. 2016); *see also Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005)

14   (subpoena for ten years of business records was overbroad because it was not limited to the three-year

15   period relevant to breach of contract claims).

16         *Finally*, Palantir seeks the very same information it has been twice precluded from pursuing in

17   the California state court case.  If anything, the broad scope of Palantir's requests—which again cover a

18   nearly twelve-year time period and include <u>all</u> documents relating to <u>all</u> of Abramowitz's patent

19   applications—shows that Palantir is seeking discovery for use in California, not Germany.  This Court

20   should not countenance Palantir's attempt to use duplicative, international litigation to obtain the

21   discovery it was twice precluded from pursuing in California.

22         This Court should deny Palantir's request for relief outright, rather than attempting to narrow the

23   requests.  "It was [Palantir's] job to make appropriate requests, and it did not do so."  *See In re O2CNI*

24   *Co., Ltd.*, 2013 WL 5826730, at *16 (N.D. Cal. Oct. 29, 2013).

25   **IV.    <u>CONCLUSION</u>**

26         For the reasons set forth above, Abramowitz respectfully requests that the Court deny Palantir's

27   application.

28

24

1

DATED: September 7, 2018

Respectfully submitted,

2

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

3

By: */s/ Jack P. DiCanio*

4

Jack P. DiCanio

5

Attorneys for
MARC L. ABRAMOWITZ

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

25