# EXHIBIT B

```
 1              SUPERIOR COURT OF THE STATE OF CALIFORNIA

 2                     COUNTY OF SANTA CLARA

 3          BEFORE THE HONORABLE MARY E. ARAND, JUDGE

 4                      DEPARTMENT NO. 9

 5                          --o0o--

 6
     PALANTIR TECHNOLOGIES, INC.,
 7
                     Plaintiff,
 8
     VS.                               CASE NO. 16CV299476
 9
     MARC L. ABRAMOWITZ,
10
                     Defendant.
11
     _____/
12

13
                    TRANSCRIPT OF PROCEEDINGS
14                     February 13, 2018

15

16   APPEARANCES:

17

18   For the Plaintiff:   BOIES SCHILLER FLEXNER, LLP
                          BY:  JOHN T. ZACH, ATTORNEY
19                             DAVID ZIFKIN, ATTORNEY
                               JUAN VALDIVIESO, ATTORNEY
20

21   For the Defendant:   SKADDEN, ARPS, SLATE, MEAGHER & FLOM
                          BY:  ALLEN RUBY, ATTORNEY
22                             WILLIAM J. CASEY, ATTORNEY
                               JACK P. DICANIO, ATTORNEY
23

24

25

26   Official Reporter:   TALTY COURT REPORTERS, INC.

27                        Cambria Denlinger, CSR 14009

28
```



```
 1   San Jose, California                    February 13, 2018
 2                        PROCEEDINGS:
 3           THE COURT:  Appearances, please.
 4           MR. ZACH:  Good morning, your Honor.  John Zach
 5   and David Zifkin from Boies Schiller on behalf of
 6   Plaintiff.
 7           MR. RUBY:  Good morning, your Honor.  Allen
 8   Ruby, Jack DiCanio, and William Casey here for
 9   defendants.
10           THE COURT:  And you are?
11           MR. VALDIVIESO:  Juan Valdivieso from Boies
12   Schiller and Flexner on behalf of Palantir.
13           THE COURT:  One lawyer on each side.
14           So reading through this motion, there were a
15   couple of things in it that I think are not entirely
16   accurate with the law in that they do not need to prove
17   that they have a trade secret to do a trade secret
18   disclosure.  They're just doing this to let you know
19   that what they claim their trade secret to be.
20           Secondly, the Court doesn't look at whether the
21   trade secret is a trade secret, for example, by
22   examining whether or not it's in the public domain or
23   not.  So that's not a relevant factor in this.  The only
24   question for the Court is whether the trade secret
25   adequately describes the trade secret so we can move
26   forward in the case and do discovery on it.
27           Now, one thing I think Plaintiff's counsel
28   needs to be aware is the trade secret is it.  So if you
```



```
1    later tried to expand on what you claim your trade
2    secret to be, you're kind of stuck with what's in this.
3    Do you understand that?
4            MR. ZIFKIN:  I do understand that, your Honor.
5    There is case law that there has to be good cause to
6    amend, of course, but we understand that this is our
7    discloser obligation, and that we're moving it to the
8    Court.
9            THE COURT:  So, Mr. Ruby, you want to comment
10   on that?  This is not a source code case, so they don't
11   need to disclose source code.  I've been told source
12   code is not at issue.  So in what ways do you think this
13   disclosure is inadequate?  And I know that trade secrets
14   can include compilations and that sort of thing, which
15   is kind of what it looks like to me your trade secret
16   is.  Is that a fair statement?
17           MR. ZIFKIN:  That's fair.
18           THE COURT:  So, Mr. Ruby.
19           MR. RUBY:  Your Honor, I appreciate the Court's
20   guidance as it said about what they do and do not need
21   to do.  From a practical standpoint, this report of the
22   disclosure discloses nothing.  It uses buzz words.
23   Everything is a concept and a system and a compilation.
24   There are plenty of those and according to the purported
25   disclosure, it works great.  Everybody would want one or
26   more, but it doesn't tell us anything to allow us to
27   defend the case as the statute contemplates we're
28   entitled to defend it.
```



1    THE COURT:  Can I ask what they would need to

2    do for it to be an adequate trade secret disclosure in

3    the context of what they're claiming here?

4    MR. RUBY:  Sure.  A trade secret disclosure --

5    let me use a phrase that's not classically a legal

6    phrase, but it's useful in this.  The trade secret

7    disclosure needs to tell us, as the defendant, what the

8    special sauce is.  You know, it can't be conclusory, and

9    can't say it allows the calculation of insurance

10   premiums based on such and such.

11   Well, that's actually a conclusion that that's

12   what it does, but it doesn't say that's what makes it a

13   trade secret.  Is it that this product allows people to

14   do things blindfolded?  Or to do it with less human

15   resources?  Or to do it quicker as shown by such and

16   such?

17   Could I invite the Court, please, if it has the

18   disclosure up there with it --

19   THE COURT:  I'm looking for it.  It's in here

20   somewhere.

21   MR. ZIFKIN:  I have an additional copy if you

22   want.

23   THE COURT:  I've got it right here.

24   MR. ZIFKIN:  The one thing I would ask, your

25   Honor, is that if counsel -- again, we filed this under

26   seal, and the parties have agreed that pursuant to the

27   Court's issuing a protective order that it will be

28   maintained as being confidential.  So I would ask that



1    he not read it out loud, but he, sort of, can summarize

2    it more abstractly.  I think that's sort of -- we have

3    to try to maintain its secrecy.  I understand he has to

4    make his argument.  I want to let him to do that however

5    he can, but I would like to avoid him just reading it

6    wholesale.  Directing the Court's attention to it is

7    probably fine.

8         MR. RUBY:  I'm not trying to take a cheap shot

9    by getting into the trade secret.  The whole point is,

10   I'm trying to answer the Court's question by pointing

11   out that there's no trade secret in here.

12        Could I invite the Court, please, if it would,

13   to, say, look at No. 4.  This is a pretty easy target --

14   the whole thing -- but if we could look at No. 4

15   describing something to do with insurance.  Are we

16   looking at the same paragraph?

17        There's apparently this product that does or

18   allows for calculating risk and potential damages and

19   premiums.  Apparently it's a tool for computing

20   premiums.

21        My point is, if you look at No. 4, that's what

22   every insurance company since the beginning of time has

23   done:  Looks at the risk; looks at the cost of a bad

24   event, and allows for the computation of premiums.

25        Well, that's fine.  That's describes, perhaps,

26   a lawful business, but it's not a trade secret.  There's

27   nothing about it that's secret; that's nothing that even

28   gives a clue as to how it derives economic value from



1  secrecy.

2       So getting back to your Honor's question a

3  minute ago, what would they have to do?  Well, if there

4  were a trade secret -- of course, we don't think there

5  is -- but if there were a trade secret that under lay

6  the item that's disclosed in No. 4, it would say What is

7  special about the way it does this?  What distinguishes

8  this purported tool from what insurance companies have

9  historically and always done in terms of setting

10  premiums?  Look the risk, look at cost, look at pricing.

11  That's what they say they're doing.

12       And, your Honor, if the Court please, the same

13  could be said for every single one of these 39 purported

14  trade secrets.  These are generic descriptions.  So to

15  use a more formal term "special sauce."  What a trade

16  secret disclosure can't do, if it's to comply with the

17  law, is to be generic, to be conclusionary, and generic.

18  And that's all this is.

19       If I were to -- counsel doesn't want me to so I

20  won't read No. 4 into the record -- but --

21       THE COURT:  I've just read it.

22       MR. RUBY:  Sure.  And if No. 4 were to be

23  published on the front page of the San Jose Mercury, so

24  what?  What possible secret could be revealed or

25  disclosed by No. 4?

26       This trade secret purported disclosure was done

27  carefully to give away no information.  Your Honor is

28  well aware of the pulling and tugging that goes on in



1    alleged trade secret claims.

2           THE COURT:  I would have been involved in those

3    cases, yes.

4           MR. RUBY:  And your Honor never pulled nor

5    tugged, I'm sure, but for the rest of us, we're doing

6    the best we can.  Your Honor is a fount of information,

7    I'm sure, but that's the exception.  And the statute

8    maybe doesn't require that degree of forthcomingness,

9    but it requires enough to let us defend.

10          If this were the approved trade secret

11   disclosure, not only are we handicapped in the defense,

12   but let me go, if I could, to your Honor's advisement of

13   the parties that the trade secret disclosure document,

14   absent good cause or unusual circumstances, is what the

15   plaintiff is stuck with.

16          Well, when it's this broad, I mean -- again,

17   use No. 4 for example.  If this were the allowed

18   designated trade secret, it's broad enough to describe

19   anything having to do with insurance rates set, isn't

20   it?  This is a very, very big tent that they've created

21   here, and that's not fair.  There's got to be some

22   limitation that's part of the disclosure.  In other

23   words, it has to limit what's disclosed to something

24   that can be understood in a reasonable away, and they

25   can impose boundaries as the litigation goes forward.

26   Otherwise, all the battling that goes on now, as your

27   Honor knows, just gets repeated at every stage.

28          So, there are -- finally, if I may?  They



```
1    say -- we don't necessarily agree with this -- but they
2    say, the trade secret -- their trade secrets -- are
3    disclosed in Mr. Abramowitz's patent applications.
4            THE COURT:  Those are public documents.
5            MR. RUBY:  That's what they say.  And we say,
6    which I think is pretty reasonable, if that were true --
7    that's what they say, okay.  One easy way to shortcut a
8    lot of this pulling and tugging would be for them to
9    extract specifically what it is that's in the patent
10   application that they say describes their trade secret
11   instead of dumping on the Court and everybody a big
12   stack of patent applications, and say It's in there.
13   We're assuring you it is.  Go find it.
14           They say that it's disclosed in the patent
15   applications.  It seems it would be a very small step
16   for them, if that were true, to say Here's where it says
17   X.  That describes one of our trade secrets.
18           Why go to the trouble -- I think we know why --
19   but why go to the trouble for a legitimate reason to
20   create a parallel, or a different disclosure, which is
21   as broad and generic as this if, according to them,
22   there are public documents that already describes their
23   trade secrets?
24           MR. ZIFKIN:  I would address that in two ways.
25   One is, at this stage, right, this is -- discovery's
26   been stopped.  So the moment discovery starts, I expect
27   I'm going to get an interrogatory from my colleague
28   saying Please identify all parts of the patent
```



1    application in which you identify which map on to this.

2            THE COURT:   Why don't you have them in here?

3    I'm not seeing something that says it's, quote, patent

4    application.

5            MR. ZIFKIN:   Because I don't think we have to

6    do that at this stage under the law.   We'll answer to

7    the interrogatory, that's going to be our obligation.

8    But moving beyond --

9            THE COURT:   I suspect I'll see a motion to

10   compel on that one.   Let me just start with something I

11   want to do in this case which is to set up a process

12   where you are required to have an informal discovery

13   conference before filing any motion to compel.   There's

14   something new in the code about that that I've had in a

15   few cases that I've adopted such a process, but now the

16   code specifically allows me to.   There's a new code

17   section that says that, so I'm going to require that for

18   this case.

19           So set it up by calling my clerk, and we'll do

20   Friday at 10:00, something like that.   That will be make

21   it easier for us to talk about trade secrets before

22   motions to compel are filed.   So that's just a

23   digression.

24           MR. ZIFKIN:   That's great.   We really

25   appreciate that, and I think we have pretty open

26   dialogue between the sides anyway, so that would be

27   good.

28           So the point is, we -- the disclosure is



1    sufficient enough to let them -- put them on notice to

2    make their defenses and to investigate the borderline of

3    whether or not these things are secrets or whether or

4    not they're generally known.  That's what we're entitled

5    to do.  That's --

6            THE COURT:  This is pretty general.  It has a

7    lot of words that don't necessarily, to me, say a lot.

8    And I think this doesn't disclose anything secret.  They

9    all start with proprietary business plan concepts this

10   and that does this thing, but it doesn't tell anybody

11   how it does those things.

12           MR. ZIFKIN:  For the one that counsel pointed

13   out, No. 4, that does map on to part of the patent

14   application -- one of the patent applications that

15   Mr. Abramowitz filed.  And in filing them,

16   Mr. Abramowitz himself is claiming they're novel;

17   they're not known.  Those concepts aren't things that

18   are generally out there.  So I think he's on board with

19   enough notice to understand that this --

20           THE COURT:  So he's filed these patent

21   applications.  He's, obviously, claiming he invented

22   these things, so I think that you are under an

23   obligation to tell him what things he claims he invented

24   were in fact -- belonged to you.

25           And so him having filed -- I don't think he's

26   on notice if you simply say he could just look at his

27   own patent applications.  I think you need to say what

28   in his patent applications are concepts that belong to



1    your client.

2         MR. ZIFKIN:  That's fair.  I want to be clear;

3    that's not what we're doing.  What we're also doing is

4    he -- counsel started off today arguing that, you know,

5    it's hard for him to understand this because it's filled

6    with buzz words.  The language to articulate these

7    secrets are too general.  We made a point of referring

8    to the patent applications in our papers to show that

9    these are the same words that are used in the patent.

10   And the same words are used in these areas that they do,

11   in fact -- can understand them.  They do understand what

12   we are planning to be our secret, using this type of

13   language, and that that's enough for them to move

14   forward.

15        That's why we did the side-by-side with the

16   bold because, you know, they keep saying I don't

17   understand what this means; this isn't specific enough,

18   but it really does map on to what they're saying.

19        THE COURT:  I do think Mr. Ruby has a point in

20   that this looks like the universe of ideas, and I think

21   you do have an obligation to narrow it down to something

22   that is your trade secret and describe it more

23   specifically, because this is so generic, it could

24   include a whole, huge number of things.  And I think

25   this document does need to do that narrowing in some

26   respects.

27        MR. ZIFKIN:  The one thing -- I mean, we

28   respect the Court's opinion on that, obviously.  The one



1     thing I'd like to point out is that it's not an all or
2     nothing sort of proposition.  He's pointing to one.
3           They had another one that they were able to
4     understand, No. 13, which was already publicly
5     disclosed.
6           THE COURT:  I don't think that's relevant for
7     this analysis, but in any event --
8           MR. ZIFKIN:  That's right.  But the point being
9     they're able to actually achieve the statutory goal that
10    the trade secret law is in place to advance, and they
11    can do that.  And I think the parties are able to line
12    up discovery going forward.
13          We're more than happy to answer that
14    interrogatory when we get it, but I don't think it
15    should be a way to delay discovery in the context of a
16    protective order going forward.  That will delay the
17    case; they're going to get that information anyway.  The
18    disclosure is sufficient to meet the statutory bar at
19    this very discrete stage -- early stage.
20          MR. RUBY:  Well, I think counsel, respectfully,
21    misunderstands what the legislature did here.  The
22    legislature prescribed -- or requires the plaintiff in a
23    trade secret case -- every plaintiff -- to do something
24    before discovery starts.  And what the plaintiff needs
25    to do is describe their trade secrets in a reasonable
26    fashion -- I don't want to be repeating myself.  The
27    idea that well, we're on notice.  That's a word that
28    should give the Court some real pause.  This is not a



1  matter of the notice pleading.  This is a special
2  statute for special purposes to allow defendants to have
3  some special protection in trade secret cases, and
4  that's a legislative judgment that these kind of cases
5  need that degree of protection.
6        The idea that somehow a defendant is on notice
7  of something distorts the burden here.  What -- this is
8  not a subjective test.  Well, yeah, but Mr. Abramowitz,
9  he probably understands this.  He probably understands
10  that.  He can read the tea leaves.
11        The statute isn't set up that way.  The statute
12  is a uniform requirement requiring every plaintiff to
13  lay out his or her trade secret in a reasonable way to
14  allow the defense and the discovery to go forward.  So I
15  think trying to shortcut that with the idea that
16  somebody is on notice of something is not a helpful path
17  to efficient litigation and doesn't harmonize, in my
18  respectful opinion, of the statute.
19        THE COURT:  Two minutes.
20        MR. ZIFKIN:  So, you know, the standard is
21  reasonable particularity.  And the reasonable
22  particularity so they can go out and investigate the
23  claims and prepare their defenses, and our disclosure
24  actually does that.  We're not saying that
25  Mr. Abramowitz should know or he shouldn't.  We think
26  our disclosure is sufficient enough.  I do think it is
27  telling that Mr. Abramowitz wasn't even shown this
28  disclosure.  So they claim to not understand it, but



1   they sort of -- they're clear in their papers that they

2   didn't bother to show it to him.  And it's important

3   because we're all working together to try to understand

4   these things so we can focus the litigation and make it

5   go efficiently.  It's because they know what the words

6   are and the language are because they really do map on

7   to the language used by Mr. Abramowitz, and I think our

8   disclosure is sufficient, and that they'll be able to

9   acquire the information they want once discovery starts,

10  which should be immediately.  Thank you, your Honor.

11          MR. RUBY:  I'll submit the matter, your Honor.

12          THE COURT:  I think you need to make this more

13  detailed.  I do think it's too general.  I think you

14  need to -- and, no, I'm not going to take any more

15  argument.  For example, I think you do need to point out

16  where in the patent your trade secrets are found.  This

17  does not do that.  I think you need to give -- the

18  descriptions are so general it could apply to any number

19  of things, and I think it needs to clearly lay out what

20  your trade secrets are.  So I'm going to require you

21  amend this, say, within 20 days.

22          MR. ZIFKIN:  Can I propose one thing, your

23  Honor?  I take their point; they want the specific

24  citations to the patent applications.  We'll do that --

25          THE COURT:  Not just that.  To the extent

26  there's something broader in the patent applications, I

27  think you need to lay it out here with more specificity

28  than is found here.  In looking at this, I can't tell



1   what your trade secret might be and how you go about

2   doing certain things to accomplish the things that are

3   here.  So I think it needs to be more specific.

4          MR. ZIFKIN:  Well, we will amended, your Honor.

5   The thing is, we would like to do this on an expedited

6   basis, because we are -- this case has been going on for

7   quite some time.  They tried to move to federal court,

8   and we got it sent back to your Honor.

9          THE COURT:  You know, that's something that

10  defendants can do in cases like this.  And, yes, the

11  federal court sent it back.  You can amend it anytime

12  you want.  And I think you submitted an order.  I don't

13  know if you have any comments on the order, but -- and I

14  don't know if you want to modify the order, Mr. Ruby, or

15  not but -- trying to find it.  The order staying

16  discovery.

17         MR. RUBY:  Your Honor, if the court please,

18  rather than consume the Court's time this morning, I

19  will recirculate a copy of the proposed order to

20  counsel.  If they have comments, we'll try to work that

21  out and present to the Court something we can agree on

22  immediately, and if we can't, we'll submit competing

23  orders.

24         THE COURT:  So looking at your proposed order,

25  it provides that all discovery shall be stayed until

26  Palantir submits the disclosure that complies with

27  Section 292.210.  That's a little bit vague.  Who makes

28  the decision of whether they have complied?  Ultimately,



1    it might be me, but when you get it, you need to -- I'm

2    going to expect you to communicate with them and say

3    this is enough to be going on to file another motion

4    immediately.  And I know it's tough to get hearing dates

5    with me.  This is something that maybe we can set on

6    Friday at 10:00 so we can have a little more complete

7    discussion.

8                MR. RUBY:  Understood.

9                MR. ZIFKIN:  That will be very helpful, your

10   Honor, to the extent they're --

11               THE COURT:  But I don't think it should be

12   generic until it complies.  I think there needs to be

13   some standard and who decides it and why.  If you think

14   it's become adequate, then you need to just start

15   doing -- allowing discovery to happen.

16               MR. RUBY:  I understand, your Honor, and we'll

17   work out some compliance order with your Honor.

18               MR. ZIFKIN:  Thank you, your Honor.

19               MR. RUBY:  Thank you.

20               (Whereupon, the proceedings were concluded

21               at 9:46 a.m.)

22

23                         --oOo--

24

25

26

27

28



```
 1                      REPORTER'S CERTIFICATE

 2

 3      STATE OF CALIFORNIA      )

 4                               )  SS.

 5      COUNTY OF SANTA CLARA    )

 6

 7          I, CAMBRIA L. DENLINGER, do hereby certify that

 8   the foregoing is a true and correct transcript of the

 9   proceedings had in the above-entitled action held on the

10   above-entitled date;

11          That I reported the same in stenotype to the

12   best of my ability being the qualified and acting

13   Official Court Reporter of the Superior Court of the

14   State of California, in and for the County of Santa

15   Clara, and thereafter had the same transcribed into

16   typewriting as herein appears.

17          I further certify that I have complied with CCP

18   237 (a)(2) and that all personal juror identifying

19   information has been redacted, if applicable.

20

21          Dated this 13th day of February, 2018.

22

23

24

25

26          _____

27          CAMBRIA L. DENLINGER, CSR 14009

28
```









