Pages 1 - 30

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE JACQUELINE SCOTT CORLEY, MAGISTRATE JUDGE

```
EX PARTE APPLICATION OF PALANTIR      )
TECHNOLOGIES, INC. FOR AN ORDER       ) NO. C 18-MC-80132-JSC
PURSUANT TO 28 U.S.C. § 1782 TO       )
OBTAIN DISCOVERY FOR USE IN           )
FOREIGN PROCEEDINGS.                  )
```

San Francisco, California
Thursday, December 6, 2018

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Applicant Palantir Technologies, Inc.:
     KEESAL, YOUNG & LOGAN
     450 Pacific Avenue
     San Francisco, California  94133
   BY:  **CHRISTOPHER A. STECHER, ESQ.**

     FRESHFIELDS BRUCKHAUS DERINGER US LLP
     601 Lexington Avenue
     31st Floor
     New York, New York  10022
   BY:  **DAVID Y. LIVSHIZ, ESQ.**
    **TIMOTHY P. HARKNESS, ESQ.**

For Marc L. Abramowitz:
     SKADDEN, ARPS, SLATE, MEAGHER
      & FLOM LLP
     300 South Grand Avenue
     Los Angeles, California  90071
   BY:  **JACK P. DICANIO, ESQ.**

Reported By:  **BELLE BALL, CSR 8785, CRR, RDR**
    Official Reporter, U.S. District Court

(Appearances continued, next page)

**APPEARANCES, CONTINUED:**


For Marc L. Abramowitz:
                    SKADDEN, ARPS, SLATE, MEAGHER
                      & FLOM LLP
                    525 University Avenue
                    Palo Alto, California  94301
          **BY:  NIELS J. MELIUS, ESQ.**

                    WILLIAMS & CONNOLLY, LLP
                    725 Twelfth Street, N.W.
                    Washington, D.C.  20005
          **BY:  STEPHEN L. WOHLGEMUTH, ESQ.**

**Thursday - December 6, 2018**                                    **9:23 a.m.**

P R O C E E D I N G S

**THE CLERK:**  Calling Civil Action 18-MC-80132, in re Palantir Technologies, Inc.

**THE COURT:**  Okay, go ahead and make your appearances.

**MR. STECHER:**  Good morning, Your Honor.  I'm Christopher Stecher from Keesal Young & Logan on behalf of the applicant Palantir.

I'm here with my colleague, David Livshiz, from the Freshfields firm, who will be arguing on behalf of the applicant.

**THE COURT:**  All right, good morning.

**MR. DiCANIO:**  Good morning, Your Honor.  Jack DiCanio on behalf of Mr. Abramowitz.

**THE COURT:**  Good morning.

**MR. WOHLGEMUTH:**  Good morning, Your Honor.  Steve Wohlgemuth on behalf of Mr. Abramowitz.

**THE COURT:**  Good morning.

**MR. MELIUS:**  Good morning, Your Honor.  Niels Melius on behalf of Mr. Abramowitz.

**THE COURT:**  All right.  Good morning.

So we're here -- this is a tiny battle in a much larger war.  So, I get that.

So let me first ask, I guess, Mr. Livshiz, what currently is the status of the German action?

1    Has any action been filed challenging the healthcare

2 patents yet?

3         **MR. LIVSHIZ:**  Your Honor, let me take that in turns.

4    The status of the cyber action that was filed in Germany

5 in August is that it is currently pending service by the

6 Department of State.

7    Under German law, Mr. Abramowitz either has to appear in

8 Germany and accept service, which he has declined to do, or

9 service has to be made by the Court through the official

10 channels of the Department of State.

11    That process has started beginning -- since the beginning

12 of October.  And we understand it will be complete soon.  But

13 that part of it is pending with the Department of State.

14         **THE COURT:**  Okay.

15         **MR. LIVSHIZ:**  The healthcare act -- the healthcare

16  action, rather, Your Honor, given the time period that has

17  passed in trying to serve Mr. Abramowitz, our intent now is

18  to -- once service is made and he appears, to avail ourselves

19  of the opportunity to amend the German action to include the

20  healthcare claims, rather than taking another three months to

21  effect service.

22         **THE COURT:**  Okay.  Because then you could just serve

23 whatever counsel is representing him.

24         **MR. LIVSHIZ:**  Correct.

25         **THE COURT:**  Okay.  All right.  And then with respect

1     to the state-court action, has -- have the -- has the revised

2     trade secret list been filed yet?

3             **MR. LIVSHIZ:**  It has.  It was filed on October 30th.

4     I understand that Mr. Abramowitz intends to object yet again.

5         I also understand that under the rules of -- the

6     individual practices rules of the judge hearing the California

7     action, there needs to be an initial conference before the

8     objections can be filed and briefing takes place.

9         And I understand that that -- Mr. Abramowitz proposed that

10     that conference go forward I guess in February, which means

11     that the briefing would take place at the end of Quarter 1, and

12     the decision would be in Quarter 2.

13             **THE COURT:**  Okay.

14      **MR. LIVSHIZ:**  Your Honor, if I may, that's important

15     for us for the following reasons, which is once the German

16     action is served, the German calendar is actually very

17     different than the calendar in the United States.

18         Assuming that service is effected by Christmas, our trial

19     in Germany would be before next Christmas, which means we would

20     need to submit all of our evidence no later than August.

21            **THE COURT:**  Okay.  All right.  That's fine.  Okay, so

22     whoever is arguing for Mr. Abramowitz.

23         So, so, let's just start -- I kind of just want to go

24     through the *Intel* factors because I don't think -- I'm not

25     inclined to sort of deny the application outright because of

1    bad faith.  As I said, this is one tiny battle in a much larger

2    war.

3          And I -- I note that the Delaware court actually had

4    suggested that Mr. Abramowitz was using that litigation in

5    order to obtain discovery for another purpose.  So, I don't

6    want to hear that.  I get it.  I have a lot of litigations like

7    that -- this, and I understand all that.

8          And it may very well be that the German action is being

9    used in part to get discovery for other things.  But as long as

10   the German action is different -- I mean, that's something I'll

11   consider, but I'm not inclined to deny.

12         I am interested a bit in timing.  But first, let's just

13   figure out if the discovery -- how I would exercise my

14   discretion there.

15         So the first factor is the fact that Mr. Abramowitz will

16   be -- although, I don't know, I don't -- what do I do about the

17   fact that he's refused to accept service?

18         In other words --

19             **MR. DiCANIO:**  Well, Your Honor, I think that there is

20    context that counsel omitted.

21         Right now, there is a motion pending before the state

22   court.  It's an anti-suit injunction that we filed before the

23   state court, asking the state court to enjoin Palantir from

24   proceeding in the German action.

25         And the reason for that is that -- if you recall from our

papers, that there is a forum selection and waiver provision in the agreement called the transfer agreement, the 2012 transfer agreement, that Palantir has based its claim in the state court to say that we provided information to Mr. Abramowitz.  That information was covered by this provision.  And he breached that provision by taking these trade secrets and seeking patent applications from them.

So we've moved before the state court to enjoin Palantir from proceeding in Germany.  That hearing is set --

**THE COURT:**  Of course, you could just accept service and make that motion in Germany.  I mean, it's always -- that's -- okay, you can make that motion.  I'm not sure -- I'm not going to comment on that.  I wasn't that persuaded by it.

But in any event, you want a state court to enjoin a foreign proceeding.  Okay.  But -- I'm not that -- you can do that there; you can do that.  My question -- let's just go to the factors.  I'm not going to deny that.  And if that happens, then that happens.

The timing is a different matter.

**MR. DiCANIO:**  No, I understand.  But Your Honor, I believed your question was --

**THE COURT:**  Why doesn't he accept.

**MR. DiCANIO:**  Because we feel that that is not an appropriate proceeding.  And so we want to challenge that in the state court --

1      **THE COURT:**  Why don't you challenge it in Germany?

2      **MR. DiCANIO:**  Well, because, Your Honor, it is a

3  California resident in a case against a company who's

4  headquartered in California.  Where we have been litigating

5  the very same facts, now, for two years.

6      **THE COURT:**  Okay.  But the case is about a German

7  patent.  Presumably, he went to Germany to get it.

8      **MR. DiCANIO:**  Your Honor, the case is about --

9      **THE COURT:**  The case in Germany.

10      **MR. DiCANIO:**  The case is still about what Palantir

11  alleges was information provided by Palantir to Mr. Abramowitz

12  while he was a shareholder, that they claim Mr. Abramowitz

13  then took to file patent applications --

14      **THE COURT:**   In Germany.

15      **MR. DiCANIO:**  And in the United States.

16      **THE COURT:**  I understand that.  But in Germany, as

17  well.  It's not like he didn't do anything in Germany.

18      **MR. DiCANIO:**  Correct, but --

19      **THE COURT:**  That's fine.  I understand why he didn't

20   accept service.

21      Let me ask you this.  Assuming he gets served, your

22  argument is because he -- well, your argument is he'll never be

23  a party there.  Okay.  But let's assume he's a party in

24  Germany.  They offer evidence that the German court can request

25  the production of documents from somebody who doesn't reside

1 there, even if they're a party, but can't compel it.

2     And I didn't see anything in your papers that disputed

3 that sort of legal proposition as to the authority of the

4 German court.

5         **MR. DiCANIO:**  Well, Your Honor, they haven't even

6 asked the German court.  What they did was they filed suit,

7 and then four days later --

8         **THE COURT:**  No, do you -- you're not answering my

9 question.  I read through the papers.  I understand that.  Do

10 you dispute that legal proposition?

11         **MR. DiCANIO:**  Well, Your Honor, I believe that the

12 German court has discretion to order discovery that is in

13 front of it.  I don't know the limits of that discretion.

14     But  I --

15         **THE COURT:**  Well, why not?

16     So would you stipulate on the record, should your client

17 be made a party to that action, that he would comply with any

18 request of the German court?

19         **MR. DiCANIO:**  Of course, Your Honor.  If he is

20 subject to their jurisdiction and is participating in that

21 action, he would comply with whatever order the court issues.

22         **THE COURT:**  Even if it's a request, because they

23 don't have the authority to compel.

24         **MR. DiCANIO:**  Well, Your Honor, I haven't discussed

25 that with my client.  But I would imagine if he is

1    participating in that litigation and is defending that

2    litigation, that he would comply with whatever requests are

3    made.

4          **THE COURT:**  Well, why don't -- you read the papers

5    that were filed by Palantir.

6          **MR. DiCANIO:**  Yeah.

7          **THE COURT:**  And they have -- who is it, Mr. Wapner?

8    Your expert.

9          **MR. LIVSHIZ:**  No, Mister -- Prince Waldeck,

10   Your Honor, yes.

11         **THE COURT:**  "Prince" is his first name?  Or he's a

12   prince?

13         **MR. LIVSHIZ:**  I believe -- it's actually the title.

14   We can refer to him as "Dr. Waldeck" for the purposes of the

15   proceedings.

16         **THE COURT:**  Okay, because that's just weird.  Okay?

17         **MR. LIVSHIZ:**  Fair enough.

18         **THE COURT:**  The Doctor in his declaration -- I think

19   it was Paragraph 4.

20    Right?  You know what I'm referring to?

21         **MR. DiCANIO:**  Yeah.

22         **THE COURT:**  So given that, and assuming that is the

23   law, would you stipulate on the record that your client would,

24   nonetheless, agree to comply with whatever the German court

25   requested?

1        **MR. DiCANIO:**  May I have a minute, Your Honor?

2        **THE COURT:**  Yes.

3        **MR. LIVSHIZ:**  And then, Your Honor, if I may have an

4    opportunity?

5        **THE COURT:**  Of course.

6    (Off-the-Record discussion between counsel)

7        **THE COURT:**  I think I have the wrong paragraph.  It

8    was Paragraph 13.

9        **MR. DiCANIO:**  I knew which one you meant, Your Honor.

10        **THE COURT:**  Yeah.

11        **MR. DiCANIO:**  Your Honor, I'm a little bit hesitant,

12    only because I haven't posed that question to my client.  I

13    don't anticipate an issue.  But it's certainly something that

14    I can clear up very quickly after the hearing.

15        **THE COURT:**  Okay.  I would anticipate an issue, given

16    the war that is going on.  But -- okay.

17        Because that's what I think the factor, the first *Intel*

18    factor, the reason it matters if someone is a party to the

19    litigation or not, because as, of course, the Court can order

20    the discovery, then you don't so much need the order from the

21    Court in the United States.  You need that when you have third

22    parties who not are before the Court.

23        So I think the fact that Mister -- everyone seems --

24    Abramowitz?

25        **MR. DiCANIO:**  Abramowitz.

1      **THE COURT:**  -- Abramowitz is a party there, that's

2   only half the inquiry.  And I don't accept -- even though I

3   know you cite some cases that seem to accept that that, in and

4   of itself, is enough.

5      Okay.  So, why wouldn't, if that's the case -- if, if we

6   have that stipulation on the record, this case is here, should

7   they violate that stipulation.

8      **MR. LIVSHIZ:**  Uh-huh.

9      **THE COURT:**  Why wouldn't that be enough, then?

10     **MR. LIVSHIZ:**  Well, Your Honor, so there's two, two

11   points there.

12     First, if you look at Paragraph 12 of the Waldeck

13   declaration, he makes a more fundamental point.  And this has

14   been a point that has been accepted by a number of U.S.

15   tribunals, or courts, rather, which is:  German courts can --

16   do not understand the concept of discovery as we understand it

17   today.  The most that they could do would be to request

18   Mr. Abramowitz to turn over a specific document, which we would

19   first have to identify by name, rank and serial number.

20     And what I mean by that, we would have to say:  This is an

21   email from Mr. Abramowitz to Palantir, on Date X, and we would

22   like him to produce a copy of that email.

23     That is very different than the discovery that we seek and

24   that we will need to defend ourselves -- or to prosecute our

25   action.

1    I would commend to you Judge Posner's decision in the

2  *Heraeus* case in the Seventh Circuit, which we cited in both our

3  opening application and our reply, where Judge Posner goes on

4  at length about particularly in cases like this, 1782 discovery

5  is appropriate.

6    Also, Your Honor, I've prepared a small guide to sort of

7  help through the day (Indicating).  If I could hand up --

8         **THE COURT:**  The day, oh, we're not here for the day.

9         **MR. LIVSHIZ:**  Well, hopefully the -- our meeting

10  together this morning.

11    I do have a copy for Mr. Abramowitz's counsel.  If I could

12  hand up a copy to you and a copy to him?

13         **THE COURT:**  Sure.

14    **MR. DiCANIO:**  Your Honor, I would just say I object,

15  in the sense that we should have been given had a copy of this

16  before the hearing.  We were all seated outside for a long

17  time before the hearing.  So this is the first time I'm seeing

18  this.

19    (Document tendered)

20    (Document handed up to the Court)

21         **THE COURT:**  It's just a demonstrative.  And at the

22  end of the hearing, I will hand it back to alleviate any

23  concern that I would consider material anything other than as

24  a demonstrative.

25    Okay?

1      **MR. LIVSHIZ:**  So if you turn to Slide 5, Your Honor

2  this is just four cases which are similarly postulated as us.

3  Where discovery has been granted under 1782 in aid of German

4  proceedings.

5      And we cited, for example, *Cryolife* in our papers.

6      **THE COURT:**  Did you cite the other three in your

7  papers?

8      **MR. LIVSHIZ:**  We cited, I believe, *Procter & Gamble*.

9  I don't think we cited the first two.

10      **THE COURT:**  Then I'm not going look at them.  So, I

11  just have to tell you.  And, you know what the rules are,

12  right?  You can't come to court and cite a case that you

13  didn't cite --

14      **MR. LIVSHIZ:**  Okay.

15      **THE COURT:**  -- in your papers.  So you can't use it

16  in your demonstrative, either.  So I'm crossing them out.

17      **MR. LIVSHIZ:**  That's fair enough.  But I'll rest on

18  the other two, Your Honor.

19      **THE COURT:**  Okay.  But in those cases, was the party

20  from whom they were seeking discovery, were they parties --

21      **MR. LIVSHIZ:**  Yes --

22      **THE COURT:**  -- to the foreign litigation?

23      **MR. LIVSHIZ:**  Yes.

24      **THE COURT:**  Okay.  They were parties.

25      **MR. LIVSHIZ:**  All of those cases are

1    American-versus-American litigation in Germany.  1782 in the

2    United States.

3              THE COURT:  No, I understand it was American versus

4    American.  But was the American a party to the German

5    litigation?

6              MR. LIVSHIZ:  Yes.  In both of those cases, that was

7    the case.  We cited some additional cases in our papers, as

8    well.

9              THE COURT:  Did you want to say anything about those

10   cases?

11             MR. DiCANIO:  There's one very big difference,

12   Your Honor.  And I think we're starting by kind of missing

13   this fact.  And that is that what's different here is that we

14   have a case pending in California.

15        And what this -- what 1782 application is doing here, it's

16   allowing them to get access to discovery where, under

17   California law, they're not entitled to it yet, because they

18   haven't met the standards that California requires.

19             THE COURT:  No, I understand that.  But to me, that's

20   a question of timing, I guess.  So, and maybe --

21             MR. WOHLGEMUTH:  No, Your Honor, and that's where

22   they've misstated.  It's not a questioned of timing.

23        Under California law, they have articulated this in their

24   briefing to you as:  Well, this is about how to structure

25   discovery.

1        That's really only a small part of the California trade

2   secret regime.  What California law is saying is:  Listen,

3   we're worried about abusive actions being filed against

4   defendants where trade secret allegations are made, with

5   unspecified allegations.

6        And such, you start this process, you have a very liberal

7   pleading standard that we have in California.  And then you get

8   all of this discovery from your opponent about all of their

9   confidential and proprietary information.

10       So what California says is:  We're not going to allow you

11  to do that.  We're not going to allow you to proceed in this

12  case, unless you could satisfy a certain standard.

13            **THE COURT:**  That's what I'm saying.  It's about

14   timing.  Right?  So it may be timing in terms of when you get

15   the German discovery.  That's what I'm saying it may be about

16   timing.

17       Once the trade secret case is going forward in California,

18  right, then that argument disappears.  Because the judge had

19  said:  Okay, you've sufficiently identified your trade secrets,

20  and then it's going forward.

21       That's the timing I'm talking about.  So --

22            **MR. DiCANIO:**  Or -- Your Honor -- I'm sorry to

23   interrupt Your Honor.

24            **THE COURT:**  Go ahead.

25            **MR. DiCANIO:**  Or, or -- we've been at this for two

1  years.  And they haven't been able to meet the reasonable

2  particularity standard that's required under the statute.

3      This is all about the strike 3 in that action.  Because

4  the Court has the discretion to say: You know what?  I've given

5  you, now, three tries.  I'm dismissing the action.

6      **THE COURT:**  Okay.  Well, then, then that action isn't

7  a reason not to go forward with the discovery here.

8      **MR. DiCANIO:**  Then, Your Honor, we see where we are

9  at that point in time.

10     **THE COURT:**  That's why I'm saying it's a timing.  I -

11 I hear that.

12     **MR. DiCANIO:**  Yeah.

13     **THE COURT:**  But by the way, you know -- because you

14 actually wanted to be in Federal Court, right?  You originally

15 -- and do you know that many judges on this Court do not

16 enforce that state trade secret law, because they say it's

17 procedural and not substantive?

18     I don't know.  That's just a little bit of irony.

19     **MR. DiCANIO:**  I didn't know that, Your Honor.  But I

20 will tell you, in California state litigation, it becomes a

21 very, very important gating issue that there's a lot of

22 litigation over, and Judge Arand in the state court has spent

23 a lot of time on.

24     We've been through this for two years with these folks.

25     **THE COURT:**  No, no, no, I understand that.  I

1    understand that.  Did you want to -- I mean, I guess part

2    of -- and we'll just sort of the cut to it, why don't we just

3    cut to it.  Which, I do think some of their discovery they are

4    seeking would be relevant and appropriate in the German case.

5    I don't know why you need it today.

6         **MR. LIVSHIZ:**  Your Honor, let me just take a moment

7    and explain what's happening.  And I do think that there's a

8    different solution that would address both Mr. Abramowitz's

9    concerns, and would allow us to prosecute our action in

10   Germany.

11        And the concern is this: Mr. Abramowitz filed his patents

12   in Germany.  In late 2017 and early 2018, he has abandoned

13   them.  That has a unique effect under European law which is

14   different than the United States.  It means we cannot now apply

15   for that patent which we believe to properly belong to us,

16   until we have a court declaration saying that the patent -- we

17   are entitled to the patent (Indicating quotation marks).  That

18   is the nomenclature of the German proceeding.

19        The longer we go before we have a trial and a verdict, the

20   less likelihood under German law that we will be able to

21   enforce our rights under the patent.  Because in the interim,

22   the patent has been abandoned, and other market participants

23   can fill the space.  And their interests over time increase,

24   and our interests in securing our invention over time decreases

25   in Germany.

1       **THE COURT:**  No, I understand that.  But why shouldn't

2   we at least wait until he is served, and the case is moving

3   forward?  Because nothing can happen until he's served.

4       **MR. LIVSHIZ:**  Fair enough, Your Honor.  I don't think

5   we have a problem waiting until he's served.  I do think we

6   have a problem waiting until the state court resolves the

7   issues I just noted.

8       Mr. Abramowitz proposed the initial conference on the

9   third round of objections for February.  That motion may not be

10  decided until June.  We need to submit all of our evidence,

11  assuming we get served, by August.

12      But what we did propose in our papers and what

13  Mr. Abramowitz hasn't responded to at all is if the concern is

14  that we will use German discovery to enhance our position in

15  the California litigation, we have a solution, which is:  We

16  are not involved in the California litigation.

17      **THE COURT:**  Uh-huh.

18      **MR. LIVSHIZ:**  Freshfields is German counsel, and

19  counsel for the purposes of this arbitration -- this

20  proceeding, only.

21      **THE COURT:**  Ah.

22      **MR. LIVSHIZ:**  And we will enter into a protective

23  order that limits who can see the documents to, for lack of a

24  better word, Freshfields and European counsel.

25      **THE COURT:**  Ah, almost like a patent prosecution bar.

1      MR. LIVSHIZ:  I'm not familiar, so I'm hesitant to

2  agree.  But the idea is we will limit who can see the

3  materials only to the people who are working on the European

4  litigation who will not work on the California action.

5      THE COURT:  That seems like a fair compromise.

6  Again, I --

7      MR. DiCANIO:  It's not fair at all.  Your Honor, with

8  all due respect, it's not fair at all, for this very same

9  reason.

10      Think about where we are in this miscellaneous proceeding

11  filed before you.  They have a German proceeding that they

12  filed in.  But they haven't even served the defendant yet.

13      THE COURT:  Well --

14      MR. DiCANIO:  They haven't asked --

15      THE COURT:  No, now, let me finish.  That argument is

16  not that persuasive.  They tried to serve him, and your client

17  refused service.

18      MR. DiCANIO:  Your Honor --

19      THE COURT:  So now they're having to go through the

20  State Department, which is a process that began in October.

21  So, that process.

22      But once he's served, once he's served, and the German

23  case then is moving forward, what's wrong with their proposal?

24      MR. DiCANIO:  Because what the Court is being asked

25  to do is being asked to give them a right to discovery -- when

1    you are a third party in this litigation in some sense -- that

2    the German court may or may not give them, right, based upon

3    their request to the German court.

4            **THE COURT:**  That's not a good argument under *Intel*.

5            **MR. DiCANIO:**  Where the state of California -- but

6    here's what the *Intel* court didn't talk about and the cases

7    that they cite don't talk about.

8        There is litigation pending in California between

9    Mr. Abramowitz, a California resident, and Palantir,

10   headquartered in California.  And they are litigating the same

11   nucleus of facts.

12       And in that case, under California law, where all of the

13   parties are subject to -- because California has

14   jurisdiction -- is saying:  You don't get this discovery,

15   because you haven't reasonably identified with particularity

16   your trade secrets.

17           **THE COURT:**  You don't get discovery for use in the

18   California action, and they're agreeing.  We cannot use it in

19   the California action.  And we will ensure  we won't give it

20   to -- it would be attorneys' eyes only.

21       Right?

22           **MR. LIVSHIZ:**  Yeah.

23           **THE COURT:**  It would be attorneys' eyes only, and

24   only those attorneys working on the German case who are not

25   working on the California case.

1    "We agree with you," they're saying.  "We agree with you.

2 You're right; that would be unfair for us to be able to use it

3 in the California action."

4         **MR. DiCANIO:**  But Your Honor, again, he still needs

5  to be served.  Two, they need to make the request to the

6  German court.

7     And, and I guess the way we look at this is:  Why is this

8 Court getting in the middle of both of those situations, in a

9 situation where the underlying action is already being

10 litigated?

11        **THE COURT:**  So I'm not getting -- we are not getting

12  involved in the California action, because they've agreed that

13  it can't be used in the California action.  So now all we're

14  talking about is the German action.

15     You don't dispute that the only way they could get his

16 claimed inventorship vacated is in Germany.  That can't be done

17 in California.

18        **MR. DiCANIO:**  I don't agree with that, Your Honor.

19        **THE COURT:**  Well, I don't have anything in front of

20  me, and that seems --

21        **MR. DiCANIO:**  Well, Your Honor, that's the whole

22  point of the California case.  The whole California case is

23  about who invented these trade secrets.

24     It's -- it is them saying that:  These patents that you

25 filed in the U.S., right, those were our trade secrets.  We

1  told you about them.  You took that information, and then you

2  stole that from us, and you went ahead and you filed patent

3  application.

4      That will necessarily be decided in the California action

5  as to:  Who invented this technology.  Was it Palantir?  Or was

6  it Mr. Abramowitz?  That is part of it.  What they've done is

7  confused the issue by pointing to the remand order from the

8  Federal Court.

9      And really, what the Court was saying was that

10 inventorship was not the exclusive claim that was in the case,

11 because they brought also breach of contract and other types of

12 claims related to the trade secret and related to the 2012

13 transfer agreement.  And so, Your Honor, it is very much

14 central figure in this.

15     And this is why I think all of this seems wrong to me.

16 Because if this gets litigated in California, there will be a

17 determination.  They could get damages in California, because

18 they made a request for damages, for all damages that flowed

19 from the communication of these trade secrets to third parties,

20 whoever they are.

21     They can get an injunction to enjoin Mr. Abramowitz in the

22 California action.  They asked him to either withdraw or amend

23 his applications.

24     All of the relief that they are seeking in Germany, they

25 can get in California.  But here's what they did.

1          **THE COURT:**  No, they can't.  The California court

2    can't do anything with that German patent.

3          **MR. DiCANIO:**  They absolutely can, Your Honor.  And

4    they haven't answered this.

5      The California court could enjoin Mr. Abramowitz, and say:

6    You must amend or withdraw that application.  That's their

7    request in the state court.

8          **THE COURT:**  The German patent?

9          **MR. DiCANIO:**  They have jurisdiction over

10   Mr. Abramowitz because he's a citizen; he's a party to the

11   litigation.  And they could enjoin him, and say: You need to

12   withdraw or amend your patent applications in the U.S. and in

13   Germany.

14     They have not cited a single case that suggests that the

15   state court doesn't have that authority.

16         **THE COURT:**  When is your motion being heard, the one

17   in the state court you said --

18         **MR. DiCANIO:**  It's January -- can I just check --

19         **MR. LIVSHIZ:**  Then, Your Honor, if I may respond,

20   because there's two areas that are --

21         **MR. DiCANIO:**  January 15th, Your Honor.

22         **MR. LIVSHIZ:**  Okay.

23     Your Honor, the problem with Mr. Abramowitz's argument is

24   the following:  As a matter of European law, any declaration of

25   the California court is, frankly, irrelevant.  This is a

decision that, under European patent convention, has to be
rendered by the Munich court.

Second of all, just as long as we're talking about the
remand decision, Your Honor, I would point you to Judge
Hamilton's decision.  And this is at Page 5 --

**THE COURT:**  So about how -- with the -- for the
domestic patents, there was only the PTO that could do
anything, and that the court would -- no, I understand that.
I understand that.

I don't -- but so this is -- this is --

**MR. DiCANIO:**  Your Honor, can I respond to that?

**THE COURT:**  No, no.  Let me finish.

This is what I think needs to be done, because I think it
-- it gets us a little time.  Mr. Abramowitz needs to be served
in Germany.

**MR. LIVSHIZ:**  Yes.

**THE COURT:**  Because, as you concede, if he hasn't
even been served yet, nothing's going to happen; you don't
need that.

**MR. LIVSHIZ:**  Yes.

**THE COURT:**  Once that happened and something actually
happens, then we'll actually -- well, and given that, then you
have your argument as to -- or your agreement that you would
create some sort of wall --

**MR. LIVSHIZ:**  We are happy to look at any protective

1   order --

2         **THE COURT:**  Right, which this Court would maintain

3   jurisdiction of.

4         **MR. LIVSHIZ:**  Of course, Your Honor.

5         **THE COURT:**  Right.  Wouldn't see it.  By then,

6   though, I assume -- we're in December -- your motion would

7   have been heard.

8         **MR. DiCANIO:**  (Nods head)

9         **THE COURT:**  If your motion is denied, frankly, that

10  weakens your argument a lot.  Because that's essentially the

11  argument that you're making there.  And so then I'll decide

12  this motion in that context.

13        **MR. LIVSHIZ:**  Okay.

14        **MR. DiCANIO:**  Fine, Your Honor.  Can I just make one

15  more point?  You've been so patient.

16        **THE COURT:**  Okay.

17        **MR. DiCANIO:**  More patient than I would have been, I

18  think, if our roles were reversed.

19      He's absolutely wrong (Indicating).  German courts do

20  recognize U.S. judgments.

21      And too, what he's missing is that it would be an order

22  from the state court saying to Mr. Abramowitz:  You must amend

23  or withdraw that application.  So he would have to take

24  affirmative action to address that situation.

25      And they have cited nothing in their papers -- although we

```
 1   raised it -- saying that that would not be -- that that would
 2   not work and not be effective in Germany.
 3              THE COURT:  Okay, I don't need to decide that.  And
 4    basically, you have your argument in front of the state court
 5    right now, --
 6              MR. DiCANIO:  Yes.
 7              THE COURT:  -- asking the judge to stay the German
 8    court.  If you win that, great.  If you lose that, then I
 9    think those arguments are not very good at that point.
10        But, you said it's going to be heard January 15th.  I'm
11   inclined to wait until after that, because I don't see any
12   reason why I need to rule today, given that your client hasn't
13   been served yet.
14              MR. DiCANIO:  I understand.
15              THE COURT:  Right?  I shouldn't -- then there's no
16    reason you need it right now.
17        Now, I'm sure I have a representation on the record that
18   everything they're seeking is being preserved.
19              MR. DiCANIO:  Yes, Your Honor.
20              THE COURT:  Okay.  All right.  And we're not
21    concerned --
22              MR. DiCANIO:  Well, it's the exact same stuff that's
23   subject to the discovery in California.  That's what's going
24   on here.
25              THE COURT:  Okay.  All right, fine.  So, so there
```

1   isn't that concern, as well.

2           **MR. LIVSHIZ:**  Uh-huh.

3           **THE COURT:**  So then what I think we should do, then,

4   is once -- and don't have your client continue the hearing in

5   January before the state-court judge.

6           **MR. DiCANIO:**  No.  We're -- we're eager to be in

7   front of her.

8           **THE COURT:**  All right, good.  Then once they've been

9   served, and that hearing occurs on January 15th, then why

10  don't we do this.  Set up a conference call with -- a status

11  with Ms. Means.  And then we can talk about having a hearing.

12  I imagine you probably all want to come in person again,

13  because everyone likes visiting San Francisco.  Or we can do

14  it by telephone.

15      We'll do this conference call status by telephone, and we

16  can talk about how to proceed at that point.  Whether I should

17  just take it under submission; whether you want to submit

18  additional materials in light of the developments in the case.

19  Or, or whether you want another hearing.

20          **MR. LIVSHIZ:**  That sounds great for us, Your Honor.

21      I would just note that on the very last point that was

22  said, German courts recognize U.S. judgment.  This is not that

23  particular question.  As explained at length in Dr. Waldeck's

24  reply declaration at Paragraph 8, this particular issue has to

25  be adjudicated by a German court.

1      I would also note that Skadden Arps, who is counsel for

2  Mr. Abramowitz, has a huge litigation practice in Munich.  And

3  we have not seen a single declaration on German law on

4  opposition, on their proposed surreply, or now, indeed, on the

5  California --

6           **THE COURT:**  Okay.  But I guess I'll just -- just on a

7   level up here (Indicating), all of these arguments, in effect,

8   are being made to the state court.  That they should enjoin

9   the German action.

10          **MR. DiCANIO:**  They are, Your Honor.

11          **MR. LIVSHIZ:**  Yeah.

12        **THE COURT:**  If the state court's enjoined the German

13  action, then there we are.  If the state court doesn't, then

14  the German action is going forward, and there we are.

15          **MR. LIVSHIZ:**  Okay.

16        **THE COURT:**  So I do think, actually, that makes

17  sense.

18          **MR. LIVSHIZ:**  Okay.

19        **THE COURT:**  And works with the timing, in any event,

20  since Mr. Abramowitz has not been served.

21          **MR. LIVSHIZ:**  Okay.

22        **THE COURT:**  So I'm going to leave it to you, then, to

23  contact counsel and Ms. Means to set up the status call, once

24  he's been served and the hearing has occurred.

25          **MR. DiCANIO:**  Thank you, Your Honor.

1          **MR. LIVSHIZ:**  Thank Your Honor.

2          **MR. DiCANIO:**  Appreciate your patience.

3          **THE COURT:**  Okay.  Thank you.

4      Oh, I'll give this (Indicating) back, like I said.

5      (Document handed down)

6      (Conclusion of proceedings)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

### CERTIFICATE OF REPORTER

I, BELLE BALL, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

_____
/s/ Belle Ball

Belle Ball, CSR 8785, CRR, RDR

Tuesday, December 11, 2018