FILED
MAY 21 2019
Clerk of the Court
Superior Court of CA County of Santa Clara
BY_____ DEPUTY
J. Zenzen

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SANTA CLARA

PALANTIR TECHNOLOGIES, INC., a Delaware corporation,

    Plaintiff,

vs.

MARC L. ABRAMOWITZ, in his individual capacity and as trustee of the MARC ABRAMOWITZ CHARITABLE TRUST NO. 2; KT4 PARTNERS LLC, a Delaware limited liability company; and DOES 1-50, inclusive,

    Defendants.

Case No. 16CV299476

ORDER DENYING DEFENDANTS' MOTION FOR AN ANTI-SUIT INJUNCTION

ORDER ON SUBMITTED MATTER

    The motion of defendants Marc L. Abramowitz, individually and as trustee of the Abramowitz Charitable Trust No. 2, and KT4 Partners LLC for an order enjoining plaintiff, Palantir Technologies, Inc., from pursuing patent litigation it filed against Abramowitz in the Regional Court Munich 1 in Germany (the German Proceedings), came on for hearing on February 5, 2019, in Department 10 of the Court, the Honorable Helen E. Williams, presiding. Jack P. DiCanio of Skadden, Arps, Slate, Meagher & Flom LLP argued the motion for defendants. Jay P. Lefkowitz of Kirkland & Ellis LLP argued in opposition to the motion for plaintiff. After the hearing, additional papers were filed by both sides without leave of court but

1

which the court has nonetheless considered, and the matter was then submitted for decision. After consideration of the pleadings, the evidence, the briefing, arguments of counsel, and the applicable law, the court denies the motion as follows.

I. *Relevant Background[1]*

Palantir, founded in 2004, is a privately held software and services company specializing in data analytics. It is a Delaware corporation with its principle office in Silicon Valley. According to Palantir, this case arises from Abramowitz's attempt to take advantage of his unique position as a trusted advisor and early investor in Palantir to reap for himself profits at Palantir's expense by patenting, in his sole name, inventions made by, and belonging to, Palantir. Palantir contends that as an early investor and confidant to the company and its senior executives, Abramowitz received confidential information about Palantir's most sensitive business strategies and trade secrets. But by 2014 and into 2015, Palantir alleges, instead of acting in the company's best interests, Abramowitz, despite having no history or experience of technical invention or patent innovation, filed patent applications first in the United States and then in European Union naming himself as the sole inventor and assignee of certain technologies in an attempt to steal those inventions developed by Palantir over many years. According to Palantir's operative complaint, the information disclosed to defendants in confidence generally relates to three technologies for "interpreting and analyzing data"—"Healthcare Technology," "Cyber Insurance and Cybersecurity Technology," and "Natural Resources Exploration Technology."

The patent applications filed by Abramowitz in Europe named contracting states to the European Patent Convention as "designated states" with additional references to "European" and Germany. The effect of the European filings simultaneously generated European and German applications, the former before the European Patent Office (EPO) and the latter before the German Patent and Trademark Office (GPTO). According to Palantir, Abramowitz elected not to

---

[1] The factual background is well known to the parties and their respective counsel and many of the filings in this case are under seal. In an effort to avoid disclosing in this order matters that have been designated as confidential, the Court has omitted any significant discussion of the background facts and has included only enough here for context.

fulfill the conditions for progressing his patent applications at the EPO and GPTO within the prescribed period such that they were legally deemed abandoned. Further according to Palantir, it could not commence the specific type of claim it did in the German Proceedings to protect its inventorship interests in the European patents—initially pursued there by Abramowitz—until this prescribed period had elapsed.

In the course of the relationship between Palantir and Abramowitz, three relevant written contracts came into being, each of which contains a confidentiality or non-disclosure provision and a forum selection clause that places jurisdiction and venue of any litigation concerning the subject matter of the respective contracts in the state or federal courts of Santa Clara County or the Northern District of California, respectively (Confidentiality Contracts). The first contract, a Preferred Stock Transfer Agreement, was dated August 14, 2012, and Palantir and defendant Marc Abramowitz Charitable Trust No. 2 are parties. The second contract, a purely non-disclosure agreement, was signed by Abramowitz for himself personally on July 12, 2014. The third, a Preferred Stock Transfer Agreement, was dated June 17, 2015, and Palantir and defendant KT4 Partners LLC are parties.[2]

According to Palantir, at some point it discovered Abramowitz's patent applications in the United States and Europe, respectively, and then took steps to protect the intellectual property it claimed as its own. Palantir initiated proceedings in the United States Patent and Trademark Office (USPTO) to establish its rights to the technology, including filing a derivative proceeding before the Patent Trial and Appeal Board. And it filed this lawsuit in 2016. The second amended complaint, the latest pleading iteration, alleges that defendants obtained trade secret information from Palantir while subject to the Confidentiality Contracts, and disclosed the confidential information by, among other things, filing the U.S. and European patent applications that contained the information. The pleading includes causes of action for breach of the Confidentiality Contracts and breach of the implied covenant of good faith and fair dealing

---

[2] Again, as the particular contracts are under seal and subject to a protective order, the Court refrains from describing the contracts in any more particularity. But the Court has reviewed the totality of each contract and has analyzed the pertinent provisions as relevant to this motion.

inherent in them, violation of the California Uniform Trade Secrets Act (the Act, Code Civ. Proc., § 3426 et seq.), unfair competition in violation of Business & Professions Code section 17200, and declaratory relief. The relief sought by the prayer includes money damages caused by defendants' alleged trade secret theft and disclosures of confidential information and broad injunctive relief precluding defendants from "directly or indirectly retaining, using, or disclosing Palantir's trade secret, confidential and/or proprietary information, and derivatives thereof." According to defendants, this information would include and encompass the same intellectual property as contained within Abramowitz's patent applications both in the U.S. and Europe, and so, any relief in this case that Palantir may ultimately achieve would encompass that which it might also achieve in patent litigation elsewhere.

Defendants initially responded to this action by removing it to the United States District Court for the Northern District of California, asserting federal question jurisdiction, namely that arising under U.S. patent law. They contended that though the complaint was "artfully pled," in substance, Palantir's claims against defendants necessarily raised questions of inventorship that could only be resolved by application of federal patent law. Palantir, for its part, responded with a motion in the District Court to remand the case back to this court, contending that its claims all arise under state law and do not involve or depend on federal law.

On March 9, 2017, in a written order, the District Court granted Palantir's motion to remand the case back to this court, concluding that its causes of action do not arise under federal law.[3] The court isolated the federal question identified by defendants as whether Abramowitz is or is not the inventor and owner of the disputed technology that is the subject of the patent applications and whether in filing those applications, he falsely claimed to be the inventor. The court further examined the complaint's prayer for relief, noting that a prayer by itself cannot create federal question jurisdiction. The court further noted that Palantir's complaint does not request any declaration about inventorship and characterized the injunctive relief in the prayer as falling under the Act or other state law as opposed to federal law. Relying on federal law, the court concluded that Palantir's claims and theories of relief may be adjudicated, and appropriate

---

[3] The court takes judicial notice of the order.

monetary and injunctive relief awarded, without resolution of " 'inventorship' " in the technical sense used in patent law. The court further determined that while Abramowitz's conduct in pursuing the patent applications may provide evidence supporting Palantir's state-law claims, that evidence does not convert the case to one arising under U.S. patent law. And further that all of the causes of action instead derive from state statutory or common law, which can be resolved without reaching the issue of inventorship unique to federal law, and the state-law claims must necessarily be resolved without reliance on patent law because patent law is not a necessary element of any of the pleaded causes of action. "The fact that Palantir's proposed remedy may tangentially involve issues touching on patent ownership does not convert the state law claims into federal law claims—particularly where no patents have issued." (Order, at p. 13, lines 24-27.) The case was thus remanded back to this court.

As and after the case returned to this forum, the parties have fervently disputed the adequacy of Palantir's disclosure of its trade secrets under the Act. Palantir made two unsuccessful attempts to have the discovery stay under Code of Civil Procedure section 2019.210 lifted, the court (Judge Mary Arand) each time finding that the alleged trade secrets had not been described with sufficient particularity, with Palantir's efforts amounting to no more than pointing to the patent applications. In the second of its orders, this one dated September 4, 2018, the court specified the manner in which the trade secrets should be described and the degree of particularity needed before the court would allow discovery in this case to get under way.

In August 2018, while discovery in this case remained stayed, Palantir brought the German Proceedings, seeking a declaration that Abramowitz is not entitled to obtain the international patents on the Cyber Insurance and Cybersecurity Technology and that it is instead Palantir who is entitled to patent these inventions. In the German Proceedings, Palantir also seeks compensation for all damages allegedly suffered as a result of Abramowitz's international pursuit of the patents, which defendants characterize as relief that is duplicative to and encompassed within that sought here. Defendants contend, similarly to what they claimed in opposition to remand from the District Court, that the allegations of the complaint here

necessarily include resolution of the patent claims, and therefore necessarily subsume the allegations and any relief that may be forthcoming in the German Proceedings.

In connection with the German Proceedings, and soon after initiating that case, Palantir, through different counsel from those representing it in this case, filed an ex parte application in the U.S. District Court for the Northern District of California under 28 U.S.C. § 1782 (section 1782 application) for leave to take discovery for use in the German Proceedings. Palantir sought information not just directly relating to the two technologies at issue there but to all the technologies at issue in *this* case. The application did not disclose the specifics of the Confidential Contracts or mention the discovery stay then still in effect in this case. Defendants opposed the application and posited that Palantir, frustrated by the continued stay on discovery in this case under the Act, was using the German Proceedings to leverage discovery through the section 1782 application that it was not otherwise entitled to here.

On December 6, 2018, the District Court conducted a hearing on the section 1782 application, and indicated that it was not inclined to deny it "as long as the German action is different." (Tr. at pg. 6, lines 9-10.) The court further expressed skepticism of defendants' premise that Palantir's claims in the German Proceedings about the disputed European patent rights is subsumed within the claims and facts being litigated in this action such that it is duplicative and a mere tool to obtain discovery in this case to which it was not yet entitled. The court observed that once Palantir sufficiently identifies its claimed trade secrets so as to be entitled to proceed with discovery, assuming it can, this argument "disappears." (Tr. at p. 16, line 18.) Palantir, appearing in the District Court through its separate counsel, also offered to enter into a protective order to abate the concern that the discovery it might receive through the section 1782 application would be shared beyond its separate counsel or used for purposes outside of the German Proceedings. The court deferred ruling on the application pending service of process on Abramowitz, which had not yet occurred, and pending this ruling on defendant's motion to enjoin Palantir from prosecuting the German Proceedings.

On May 8, 2019, this court (Judge Mary Arand) concluded that Palantir had, on its third try, sufficiently identified its trade secrets under Code of Civil Procedure section 2019.210 such

6

ORDER DENYING ANTI-SUIT INJUNCTION

that discovery in this case could commence. The court allowed one further amendment to narrow the 23 trade secrets Palantir described.[4]

II.   *Applicable Law on Anti-Suit Injunctions*

An anti-suit injunction restrains a party from pursuing an action in a court of a foreign jurisdiction. (*TSMC North America v. Semiconductor Manufacturing International Corp.* (2008) 161 Cal.App.4th 581, 589-591 (*TSMC*).) California law on anti-suit injunctions appears to vary from federal law applied in the Ninth Circuit, which is more liberal in application. It is, of course, California law that binds this court. *Advanced Bionics Corp. v. Medtronic, Inc.* (2002) 29 Cal.4th 697, 705 (*Advanced Bionics*), decided by the California Supreme Court some 17 years ago, remains the leading case under state law. Although California courts have a recognized power to issue an anti-suit injunction to restrain a party from litigating an action in another state's courts, this power must be exercised " 'sparingly' " and with judicial restraint. (*TSMC, supra*, 161 Cal.App.4th at p. 589, quoting *Advanced Bionics, supra,* 29 Cal.4th at p. 705.) The Supreme Court in *Advanced Bionics* explained that an anti-suit injunction may be issued to prevent conflicts between different California courts in multiple cases, but the situation becomes more difficult, and requires additional "judicial restraint," when the second case is filed in an extra-territorial forum and each state's "sovereignty concerns" are implicated. (*Advanced Bionics, supra*, 29 Cal.4th at pp. 705-707.) The court cited with approval cases from other states holding that a difference in substantive law does not justify an injunction compelling a party not to litigate a proceeding in another jurisdiction, nor does the potential that inconsistent judgments may be rendered, nor that a judgment in one action may have a preclusive effect on the other action. (*Ibid.*)

In addition to highlighting the importance of judicial restraint in the context of a motion for an anti-suit injunction, the *Advanced Bionics* court also noted that the principle of comity must be taken into account when considering whether such an injunction should be issued. (*Advanced Bionics, supra*, 29 Cal.4th at p. 707.) As the court explained, California courts should not, as a matter of courtesy or comity, and as a matter of mutual utility and advantage, interfere

---

[4] The court takes judicial notice of this order.

with a court action in another jurisdiction where neither that state nor its citizens will suffer any inconvenience from the operation of the foreign law. In furtherance of this policy of restraint and comity, the court held that enjoining a proceeding in another jurisdiction "requires an *exceptional circumstance that outweighs the threat to judicial restraint and comity principles.*" (*Id.* at p. 708, italics added.) In the employment context presented in *Advanced Bionics*, the court found no such "exceptional circumstance" to justify the anti-suit injunction because, in sum, California's "strong interest" in protecting state-based employees from noncompetition agreements did not overcome the principles of judicial restraint and comity governing anti-suit injunctions. (*Id.* at pp. 706-708.) Thus, even an important and articulated state policy still may not trump comity concerns cautioning against an anti-suit injunction.

In *TSMC, supra*, 161 Cal.App.4th 581, the Court of Appeal affirmed a denial of a motion for an anti-suit injunction, finding no exceptional circumstances in the context of a trade secrets lawsuit. (*Id.* at pp. 591-602.) The trial court had declined to issue an injunction enjoining a party from litigating a parallel proceeding in the People's Republic of China. In affirming, the reviewing court rejected arguments that an anti-suit injunction was needed to (1) preserve a California company's constitutional rights of free speech and petition; (2) protect the California court's power and rulings; (3) protect California public policies; and (4) enforce permissive contractual choice-of-law provisions. (*Ibid.*) As the Court of Appeal explained, if the Beijing court ultimately failed to provide the California company with due process, then that issue could be raised in arguing any judgment from the Beijing-issued judgment was not binding in California. (*Id.* at p. 602.)

In *Biosense Webster, Inc. v. Superior Court* (2006) 135 Cal.App.4th 827 (*Biosense*), the Court of Appeal granted a petition for writ of mandate challenging an anti-suit injunction, finding no exceptional circumstances in the context of an employment action involving, as in *Advanced Bionics*, a noncompetition agreement. In *Biosense*, a parallel proceeding had not yet been filed, and the injunction would have affected a possible action in the federal court. The court found the former element did not weigh in favor of a TRO because precluding the filing of an action implicated the principles of judicial restraint and comity as much as stopping further

litigation. It found the latter element weighed against an injunction as well because a state court is without power to enjoin the filing of a federal lawsuit. (*Id.* at pp. 837-839.) The court observed that "an anti[-]suit injunction conveys the message that 'the issuing court has so little confidence in the foreign court's ability to adjudicate a given dispute fairly and efficiently that it is unwilling even to allow the possibility.' [Citation.]" (*Id.* at p. 837.) This forcefully sums up the comity concern in the anti-suit injunction context.

What is evident from these California cases is the degree of restraint that must be exercised by a court ruling on a request for an anti-suit injunction affecting extraterritorial litigation, which restraint is then heightened even more for comity concerns. "[A]lthough injunctions may be had to prevent ' "unseemly conflict" ' between California courts in multiple proceedings, 'judicial restraint takes on a more fundamental importance' when one of the cases has been filed in a different state. ([*Advanced Bionics*, *supra*, 29 Cal.4th] at p. 706.) 'A parallel action in a different state presents sovereignty concerns that compel California courts to use judicial restraint when determining whether they may properly issue [injunctive relief] against parties pursuing an action in a foreign jurisdiction.' (*Id.* at p. 707.)" (*TSMC, supra*, 161 Cal.App.4th at p. 590.) The Supreme Court in *Advanced Bionics* had defined comity as circumstances under which " ' " 'the laws of one state are … permitted by the courtesy of another to operate in the latter for the promotion of justice, where neither that state nor its citizens will suffer any inconvenience from the application of the foreign law. This courtesy, or comity, is established, not only from motives of respect for the laws and institutions of the foreign countries, but from considerations of mutual utility and advantage.' "… ' [Citations.]" (*Advanced Bionics, supra*, 29 Cal.4th at p. 707.)

"Having discussed these principles of restraint and comity, and having stressed the fundamental importance of these principles when litigants are pursuing actions in courts of separate sovereignty," the high court in *Advanced Bionics* came to its holding "that 'enjoining proceedings in another state requires an exceptional circumstance that outweighs the threat to judicial restraint and comity principles.' [Citation.] [But] the court gave no indication of what such an 'exceptional circumstance' might be to justify an anti[-]suit injunction." (*TSMC, supra*,

161 Cal.App.4th at p. 591.) So while it is evident under California law that great restraint should be exercised and that comity concerns are paramount when a court is considering whether to issue an anti-suit injunction, just what criteria or factors might be considered an exceptional circumstance outweighing these interests is not so evident.

In *TSMC*, as noted, the proponent of the anti-suit injunction had suggested a list of four circumstances, which it argued there outweighed judicial restraint and comity concerns and were so exceptional as to warrant the injunction. The Court of Appeal discussed each of the suggested factors in turn while acknowledging that no authoritative case had identified them as having such weight. (*TSMC, supra*, 161 Cal.App.4th at pp. 591-602.) Again, the urged factors were (1) the protection of the constitutional rights of the party seeking the injunction; (2) the protection of the trial court's jurisdiction; (3) the protection of California's public policies; and (4) enforcing contractual promises as to choice of law. (*Ibid.*) In discussing the latter three factors, the *TSMC* court credited the separate concurring opinion of Justice Moreno in *Advanced Bionics* as identifying a framework for analyzing "exceptional circumstances" that would warrant the issuance of an anti-suit injunction, all of which derive from federal law. (*TSMC, supra*, 161 Cal.App.4th at pp. 595-596, 598, 602.) But the *TSMC* court emphasized that while Justice Moreno's separate concurring opinion "offer[ed] a thoughtful analysis of federal law on anti[-]suit injunctions," it did not express the majority view of the Supreme Court and thus had no precedential effect. (*Id.* at pp. 595-596.)

Justice Moreno's survey of federal law on anti-suit injunctions in *Advanced Bionics* described two approaches. (*Advanced Bionics, supra*, 29 Cal.4th at pp. 712-714 (conc. opn. of Moreno, J.).) "Under the 'restrictive approach,' which Justice Moreno favored, 'courts should only issue anti[-]suit injunctions in two situations: if "necessary to protect the jurisdiction of the enjoining court, or to prevent the litigant's evasion of the important public policies of the forum." [Citation.]' (*Id.* at p. 714 (conc. opn. of Moreno, J.).) The concurrence stressed that 'circuits that follow the restrictive approach "have interpreted these exceptions narrowly." [Citation.]' (*Ibid.*)" (*TSMC, supra*, 161 Cal.App.4th at p. 595, fn. omitted.) "Under the 'liberal approach' adopted [in other circuits], an anti[-]suit injunction may issue simply upon a showing

that there is parallel litigation in the foreign forum causing unwarranted duplication of effort, inconvenience, expense and vexation. [Citation.] The concurrence faulted this approach for giving insufficient attention to concerns of comity. (*Advanced Bionics, supra*, 29 Cal.4th at p. 714 (conc. opn. of Moreno, J.).)" (*TSMC, supra*, 161 Cal.App.4th at p. 595, fn. 5.)

But according to the *TSMC* court, the *Advanced Bionics* "majority arguably adopted an even stricter standard than the federal courts' 'restrictive approach.' " (*TSMC, supra*, 161 Cal.App.4th at p. 596.) Per the *TSMC* court, that majority "did not endorse the issuance of an anti[-]suit injunction for a California court to protect its jurisdiction. (*Advanced Bionics, supra*, 29 Cal.4th at p. 706, [707-708].)" (*TSMC, supra*, 161 Cal.App.4th at p. 596.) It also "implicitly rejected the 'policy evasion' rationale," concluding that even California's " 'strong interest in protecting employees from noncompetition agreements ... did not justify an injunction ... .' (*Advanced Bionics, supra*, 29 Cal.4th at pp. 706-707.) The *Advanced Bionics* court did not weigh the policy interest against other considerations or analyze evidence bearing upon whether the defendant was purposely attempting to evade California's policy. Rather, the court simply observed that '[a] parallel action in a different state presents sovereignty concerns that compel California courts to use judicial restraint when determining whether they may properly issue [injunctive relief] against parties pursuing an action in a foreign jurisdiction.' (*Id*. at p. 707.)" (*TSMC, supra*, 161 Cal.App.4th at p. 598.) Moreover, "even under the approach described in Justice Moreno's concurrence, the 'evading public policy' justification for enjoining foreign proceedings has been construed narrowly. [Citations.] The issue is not simply whether California has a strong public policy that is at odds with the foreign suit. Instead, the question is whether the foreign action was initiated for the purpose of evading California's public policy. (*Advanced Bionics, supra*, 29 Cal.4th at pp. 717-718 (conc. opn. of Moreno, J.).)" (*TSMC, supra*, 161 Cal.App.4th at p. 598.) As to the factor of enforcing choice-of-law provisions, "[n]o California authority supports this argument that a trial court can, or should, enjoin foreign proceedings whenever they involve claims that may be governed by contractual choice-of-law provisions" and in *Advanced Bionics* itself, which "involved a mandatory choice-of-law clause ([*Advanced Bionics, supra*, 29 Cal.4th] at p. 701), the majority did not mention choice of law in its analysis

1 ... ." (*TSMC, supra*, 161 Cal.App.4th at p. 601; see also *Biosense, supra*, 135 Cal.App.4th at p.
2 838 [choice-of-law analysis simply not a good "fit" with the injunction context].)

3     While not binding on this court, the Ninth Circuit Court of Appeals applies a different
4 analysis to the issuance of anti-suit injunctions, though even there, a court's power to do so
5 should be used "sparingly." (*Microsoft Corp. v. Motorola, Inc.* (9th Cir. 2012) 696 F.3d 872, 881
6 (*Microsoft*).) A three-part test governs a district court's assessment of the propriety of an anti-
7 suit injunction. (*Ibid.*) First, the court must evaluate "whether or not the parties and the issues are
8 the same, and whether or not the first action is dispositive of the action to be enjoined." (*Applied*
9 *Med. Distrib. Corp. v. Surgical Co.* (9th Cir. 2009) 587 F.3d 909, 914 (*Applied*).) Second, the
10 court must assess "whether at least one of the so-called '*Unterweser* factors' applies."
11 (*Microsoft, supra*, 696 F.3d at p. 881.) Third, the court must inquire into whether the impact on
12 comity is tolerable. (*Ibid.; Applied, supra*, 587 F.3d at p. 913.)

13     With respect to the first prong, and when there is a forum selection clause at play,
14 whether there is identity between the two actions is determined by a "functional inquiry"
15 concerning dispositiveness. This requires a determination of "whether the issues are the same in
16 the sense that all the issues in the foreign action fall under the forum selection clause and can be
17 resolved in the [U.S.] action." (*Applied, supra*, 587 F.3d at p. 915.) With respect to the second
18 prong, the "*Unterweser* factors" were first articulated by the Fifth Circuit Court of Appeals in *In*
19 *re Unterweser Reederei GMBH* (5th Cir. 1970) 428 F.2d 888, 896, affirmed on rehearing (5th
20 Cir. 1971) 446 F.2d 907 (*Unterweser*). The Ninth Circuit adopted *Unterweser* as useful in *Seattle*
21 *Totems Hockey Club, Inc. v. Nat'l Hockey League* (9th Cir. 1981) 652 F.2d 852, and has since
22 held that "any of the *Unterweser* factors" may justify anti-suit injunctive relief. (*Microsoft,*
23 *supra*, 696 F.3d at p. 882 & fn. 9.) The four *Unterweser* factors are whether the foreign litigation
24 would (1) frustrate a policy of the forum issuing the injunction; (2) be vexatious or oppressive;
25 (3) threaten the issuing court's in rem or quasi in rem jurisdiction; or (4) prejudice other
26 equitable considerations. (*Id.* at p. 882, quoting *E. & J. Gallo Winery v. Andina Licores S.A.* (9th
27 Cir. 2006) 446 F.3d 984, 990 (*Gallo*).)

28

The court now turns to applying the applicable California legal framework to defendants' arguments that Palantir should be enjoined from prosecuting the German Proceedings by an anti-suit injunction.

III.   *Application of Law to Defendants' Arguments in Support of the Motion*

Defendants' motion for an anti-suit injunction in essence asserts that these four factors support relief here: (1) the German Proceedings are covered by and therefore violate the forum selection clauses of the Confidential Contracts; (2) Palantir is proceeding in bad faith and vexatiously; (3) Palantir is attempting to evade this court's discovery rulings; and (4) not issuing an injunction would seriously harm international comity concerns because of the forum selection clauses. The court concludes that none of these factors in this case, taken alone or together, amount to the extraordinary circumstances that must exist under California law to warrant the issuance of an anti-suit injunction.

Taking the first argued factor—that Palantir's initiation of the German Proceedings violates the forum selection clauses of the Confidential Contracts—this is not shown to be the case. While the language of the forum selection clauses here may be broad, in each case, the clause still extends only to the subject matter of the agreements, none of which involve patent rights or claims, or inventorship issues. It is a stretch to conclude that Palantir's claimed foreign patent rights "arise out of" any of the agreements. And as noted by the U.S. District Court in its remand order in this case, patent claims, which center on inventorship, are distinct from state statutory and common law causes of action as asserted here. This is so even if there are tangential proof issues in common or if Palantir's remedies, assuming success here, may tangentially involve issues touching on patent ownership. And while defendants contend that all relief claimed by Palantir in the German Proceedings is available in this case, the court is hard pressed to understand how Palantir's perfection and protection of its international patent rights against third parties in Europe could ever be secured by way of remedy in this case. As Palantir casts it, the German Proceedings involve its assertion of European intellectual property rights based on foreign law in a European court, which is wholly distinct from the assertion of California statutory and common law causes of action asserted in this California court.

What's more, there is no California authority holding that a forum selection clause is a factor amounting to the exceptional circumstances required before a state court may issue an anti-suit injunction to restrain parties involved in foreign litigation. It's true that in *TSMC*, at issue was a contractual choice-of-law provision, not a forum selection clause. The court there rejected the choice-of-law provision as a basis for an anti-suit injunction. (*TSMC, supra*, 161 Cal.App.4th at p. 601.) Perhaps a forum selection clause would be more compelling in the anti-suit injunction context. But there is no California authority so holding. And, as Palantir contends, the published federal cases cited by defendants all involve foreign actions premised on disputes stemming from the violation or enforceability of a contract containing a forum selection clause, not freestanding or extant legal rights existing and uniquely enforceable in the foreign forum. (See, e.g., *Gallo, supra*, 446 F.3d at pp. 987, 991 [claims in U.S. District Court and in Ecuadorian court all arose from the same distributorship agreement that included an expansive forum selection clause applicable to disputes between the parties arising under the agreement or otherwise]; *Applied, supra*, 587 F.3d at p. 917 [claims asserted in Belgian court arose from termination of a contract containing a forum selection clause and could not exist otherwise]; *Microsoft, supra*, 696 F.3d at p. 889 [patent licensing agreement was basis for enjoining would-be licensor from pursuing German patent infringement remedy against prospective licensees while litigation over agreement and rights thereunder was pending; U.S. contract action would be dispositive of German patent infringement action under the licensing agreement at issue because of the contractual umbrella over the patent claims].)

Defendants' contractual waiver arguments fare no better. Two of the contacts do provide for a waiver of the right to assert by motion or defense in any suit, action, or proceeding properly brought in the federal or state courts located in the Northern District of California, and arising out of or based on the agreement, any claim that contracting party is not subject to personal jurisdiction in those courts or that the party's property is exempt or immune from attachment or execution, or that the suit, action, or proceeding is brought in an inconvenient forum, that venue is improper, or that the subject matter of the agreement is not enforceable in or by those courts. These provisions, by their plain language, do not limit a contracting party's right to bring suit on

substantive claims not arising out of or based on the agreement in other forums or waive all claims that are not subject to the jurisdiction of the state and federal courts within the Northern District of California.

In sum, while Abramowitz's alleged theft and disclosure of trade secrets in violation of a non-disclosure agreement or confidentiality provision may be a factual predicate to his European patent applications, this does not mean that Palantir's claims to patent rights in the German Proceedings necessarily "arose out of" or were "based on" those agreements, which do not involve patents or licensing of patents, or a patent umbrella, for purposes of the forum selection clauses at issue. None of the authorities cited by defendants hold otherwise or extend broadly to patent protection claims, which can be litigated and relief afforded only in patent forums determining intellectual property rights enforceable within the circumscribed affected territories. (See, e.g., *EFund Capital Partners v. Pless* (2007) 150 Cal.App.4th 1311, 1328-1329 [claims "arising from or out of" contract with arbitration provision that must be liberally construed included extra-contractual *tort* claims]; *Berman v. Dean Witter & Co.* (1975) 44 Cal.App.3d 999, 1003 [contractual provision requiring arbitration of any controversy "arising out of or relating to this contract" broad enough to require *tort* claims to be arbitrated so long as claims rooted in relationship between the parties created by the contract]; *Smith, Valentino & Smith, Inc. v. Superior Court* (1976) 17 Cal.3d 491, 497 [forum selection clause requiring litigation in certain forum of all matters "arising under or growing out of agreement" covered *tort* as well as contract claims]; *Invista N. Am. V. Rhodia Polyamide Intermediates* (D.D.C. 2007) 503 F.Supp. 2d 195, 200-207 [licensing agreement involving patents with arbitration clause and confidentiality *provision that expressly prohibited party from using confidential information in patent application* required arbitration of patent claims because they arose out of the agreement and arbitration award could be enforced through USPTO via application or court order].)

All of these cases are distinguishable from the circumstances here, most notably in the broad policies favoring arbitration—as opposed to the policies cautioning restraint here—and the subject matter of the contracts at issue directly relating to the extra-contractual claims. Moreover, the patent matters that will be adjudicated in the German Proceedings are not the same state

statutory and common law contract claims that are being litigated here.[5] None of the cited authorities alter that conclusion.

As to the second argued factor that Palantir is litigating in bad faith, and assuming for the sake of argument that this assertion is true, again, there is no California authority holding that litigation tactics, even sanctionable ones, are a basis for an anti-suit injunction or amount to the exceptional circumstances required before such relief can be granted. It's challenging to consider how such a factor could ever outweigh the comity concerns that the court in *Advanced Bionics* emphasized as dictating judicial restraint. And without assuming the truth of the allegations of bad faith, many of defendants' allegations of Palantir's wrongdoing, such as representations to the court about the scope and terms of the contracts at issue, have yet to be determined or adjudicated. The court remains unconvinced that these allegations of bad faith properly bear on the legal question of the propriety of the anti-suit injunctive relief requested.

As to the third cited factor—Palantir's attempt to evade or circumvent this court's rulings and California trade secret law requiring adequate disclosure of the trade secrets before discovery may begin—this issue has effectively become moot now that the court has declined to continue the Code of Civil Procedure section 2019.210 discovery stay in view of Palantir's latest trade secret disclosure. Moreover, as noted, as noted in later cases, the California Supreme Court in *Advanced Bionics* did not embrace the evasion-of-policy basis as an exceptional circumstance warranting anti-suit injunctive relief. (*TSMC, supra,* 161 Cal.App.4th at p. 598; *Advanced Bionics, supra,* 29 Cal.4th at pp. 706-707; *Biosense, supra,* 135 Cal.App.4th at p. 838.)

Finally, turning California's comity concerns on their head, defendants contend, citing only federal law, that *not* issuing an injunction here would seriously harm international comity. This argument is premised on the same claims about the overarching and expansive nature of the forum selection clauses in the contracts at issue as covering, and precluding, the German

---

[5] In some sense, Palantir has only itself to thank for having to address defendants' arguments that the forum selection clauses in the contracts cover patent proceedings, in the United States or in Europe. The manner in which it laid out its patent claims in the German Proceedings and elsewhere invited this argument. But no matter how the evolution of the patent claims are factually framed, it is still technical inventorship, not contractual or other state statutory rights, that are at the core of patent proceedings.

16

ORDER DENYING ANTI-SUIT INJUNCTION

Proceedings. But the court has rejected this argument, and it is not fortified by comity concerns. Indeed, the opposite is true. Under California law, which mandates heightened judicial restraint out of comity concerns and which does not call out forum selection clauses as an exceptional circumstance outweighing that restraint, defendants' argument that comity affirmatively requires injunctive relief on the basis of forum selection clauses—the scope of which doubtfully swallows the dispute in the foreign forum—falls flat.

In sum, the court does not find exceptional circumstances here that, under California law, outweigh the judicial restraint and comity concerns dictating against the issuance of an anti-suit injunction. (*Advanced Bionics, supra*, 29 Cal.4th at p. 708.) The "use of injunctive relief 'to prohibit a person from resorting to a foreign court is a power rarely and sparingly employed.' " (*Id.* at p. 705.) Based on the arguments and evidence presented here, the court is not compelled to wield that power here.

IV. *Conclusion*

Having so concluded, defendants' motion for an anti-suit injunction is denied.

IT IS SO ORDERED.

Dated: May 21, 2019

HELEN E. WILLIAMS
Judge of the Superior Court



**SUPERIOR COURT OF CALIFORNIA
COUNTY OF SANTA CLARA**
DOWNTOWN COURTHOUSE
191 NORTH FIRST STREET
SAN JOSÉ, CALIFORNIA 95113
CIVIL DIVISION



FILED
MAY 2 1 2019
Clerk of the Court
Superior Court of CA County of Santa Clara
BY_____DEPUTY
J. Zenzen

RE: **Palantir Technologies, Inc. v. Mark Abramowitz**
Case Number: **16CV299476**

## PROOF OF SERVICE

**Order Denying Defendants' Motion for an Anti-Suit Injunction** was delivered to the parties listed below the above entitled case as set forth in the sworn declaration below.

---

If you, a party represented by you, or a witness to be called on behalf of that party need an accommodation under the American with Disabilities Act, please contact the Court Administrator's office at (408) 882-2700, or use the Court's TDD line (408) 882-2690 or the Voice/TDD California Relay Service (800) 735-2922.

**DECLARATION OF SERVICE BY MAIL:** I declare that I served this notice by enclosing a true copy in a sealed envelope, addressed to each person whose name is shown below, and by depositing the envelope with postage fully prepaid, in the United States Mail at San Jose, CA on May 21, 2019. CLERK OF THE COURT, by Joshua Zenzen, Deputy.

cc: David Laurence Zifkin  401 Wilshire Blvd Ste 850  Santa Monica CA  90401
    Jack Patrick DiCanio  525 University Avenue  Suite 1400  Palo Alto CA  94301

CW-9027 REV 12/08/16   **PROOF OF SERVICE**