United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PALANTIR TECHNOLOGIES, INC.,
Plaintiffs,

v.

MARC L. ABRAMOWITZ,
Defendant.

Case No.18-mc-80132-JSC

**ORDER GRANTING 28 U.S.C. § 1782 APPLICATION**

Re: Dkt. No. 1

Palantir Technologies Inc. ("Palantir") alleges that Marc L. Abramowitz took advantage of his position as an investor and confidant to learn Palantir's trade secrets and file patent applications based on those trade secrets in the United States and Germany. Palantir has filed suit in Germany challenging Mr. Abramowitz cybersecurity patent applications and also plans to either amend the pending suit to include healthcare patents or file a separate challenge regarding the healthcare patent applications (collectively the "German Proceedings"). Palantir's ex parte application for a discovery order pursuant to 28 U.S.C. § 1782 is now pending before the Court. (Dkt. No. 1.) Having considered the parties' submissions, including their supplemental submissions, and having had the benefit of oral argument on December 7, 2018 and October 10, 2019, the Court GRANTS the application as set forth below.

## BACKGROUND

### A. The Parties and Related Proceedings

Mr. Abramowitz was one of Palantir's early investors and advisors. Throughout the course of their relationship, Palantir provided Mr. Abramowitz information regarding its trade secrets subject to multiple confidentiality agreements. However, the parties' relationship soured and eventually turned litigious when Palantir accused Mr. Abramowitz of misappropriating trade

secrets. The parties have sued each other in California, Delaware, and federal courts for numerous claims regarding domestic intellectual property rights, contract rights, and corporate rights. This 1782 application arises out of proceedings brought by Palantir in Germany regarding cybersecurity and healthcare patent applications filed by Mr. Abramowitz.

**B. The Application**

Palantir requests that the court order Mr. Abramowitz to produce documents and testimony for use in the German Proceedings and order that Mr. Abramowitz preserve evidence. In its initial application, Palantir sought the following categories of documents in Mr. Abramowitz's possession:

> (1) supporting Abramowitz's claim that he is an inventor of the technology described in the Challenged Patents;
> (2) concerning the conception of each challenged patent;
> (3) concerning the content, research, development, investment, or reduction to practice for each Challenged Patent;
> (4) concerning the ideas, concepts, systems, methods, or technologies described in the Challenged Patents;
> (5) reflecting any communication between Abramowitz, on the one hand, and Palantir, or any director, officer, or employee of Palantir, on the other, concerning the technology described in the Challenged Patents;
> (6) concerning any effort by Abramowitz to monetize the technology described in the Challenged Patents;
> (7) concerning Abramowitz's knowledge of the technology described in the Challenged Patents;
> (8) concerning communications between Abramowitz, on the one hand, and any third party, on the other, concerning the Challenged Patents or the technology underlying the Challenged Patents; and
> (9) concerning any license granted by Palantir to Abramowitz or by Abramowitz to Palantir with respect to the technology covered by the Challenged Patents.

(Dkt. No. 2 at 12-13.)[1] Palantir asserts that these requests constitute "evidence concerning Abramowitz's knowledge and understanding of the technology underlying the Challenged Patents, his communications about that technology, and documents on which he intends to rely to support his entitlement to the Challenged Patents." (*Id.* at 16:3-6.) Although Palantir initially sought documents from January 1, 2007 to the present, Palantir has revised this request to seek documents related to the Cyber Patents from January 1, 2013 to February 28, 2018 and for the Healthcare

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

Patents from January 1, 2010 through March 30, 2018. (Dkt. No. 63 at 20.) Palantir also seeks Mr. Abramowitz's deposition testimony.

### C. Procedural History

Palantir filed this Section 1782 Application with the proposed subpoenas August 13, 2018. (Dkt. Nos. 1-4.) The Court set a briefing schedule and at the completion of briefing Mr. Abramowitz submitted a motion for leave to file a sur-reply which Palantir opposed.[2] (Dkt. Nos. 14, 32, 34.) The Court set a hearing for November 9, 2018, which was reset for December 6, 2018 at the parties' request. (Dkt. Nos. 35, 37.)

In the interim, Mr. Abramowitz filed a motion in the California proceeding requesting an anti-suit injunction regarding the German Proceedings. *See Palantir Techs., Inc. v. Abramowitz et al.*, Case No. 16-cv-299476 (Cal. Super. Ct. Nov 5, 2018) (Notice of Motion & Motion for an Anti-Suit Injunction).

On December 6, 2018, the Court heard argument on the underlying Section 1782 application and stayed the application pending a decision from the California state court on Mr. Abramowitz's request to stay the German Proceedings, and pending service of the complaint in the German action on Mr. Abramowitz . (Dkt. No. 39.)

On May 21, 2019, the California court denied Mr. Abramowitz's request to enjoin the German Proceedings. (Dkt. No. 43-1.) Shortly thereafter, Mr. Abramowitz was served with the complaint in the German Proceedings in accordance with the Hague Convention. (Dkt. No. 43.) Palantir thereafter requested a status conference to discuss disposition of the Section 1782 application. (Dkt. No. 43.) At the status conference, the Court granted the parties leave to submit supplemental briefs, which have since been filed. (Dkt. Nos. 57, 61, 63.)

## LEGAL STANDARD

Section 1782(a) provides, in pertinent part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted

[2] The motion for leave to file a sur-reply is GRANTED. (Dkt. No. 32.)

> before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

28 U.S.C. § 1782(a). A litigant in a foreign action qualifies as an "interested person" under Section 1782. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 256 (2004). To apply for discovery pursuant to Section 1782, a formal proceeding in the foreign jurisdiction need not be currently pending, or even imminent. *Id.* at 258-59. Instead, all that is necessary is that a "dispositive ruling" by the foreign adjudicative body is "within reasonable contemplation." *Id.* at 259 (holding that discovery was proper under Section 1782 even though the applicant's complaint was still only in the investigative stage). When it comes to requests directly from foreign courts, district courts typically handle Section 1782 discovery requests in the context of an ex parte application for an order appointing a commissioner to collect the information. *See In re Letters Rogatory from Tokyo Dist., Tokyo, Japan*, 539 F.2d 1216, 1219 (9th Cir. 1976) (holding that the subpoenaed parties may object and exercise due process rights by bringing motions to quash the subpoenas after the court issues a Section 1782 order); *see, e.g.*, *In re Request for Int'l Judicial Assistance from the Nat'l Ct. Admin. of the Republic of Korea*, No. C15-80069 MISC LB, 2015 WL 1064790, at *2 (N.D. Cal. Mar. 11, 2015) (granting ex parte application for a Section 1782 order); *In re Request for Int'l Judicial Assistance from the 16th Family Ct. of the Supreme Ct. of Justice of the Fed. Dist.*, No. 14-mc-80083-JST, 2014 WL 1202545, at *1 (N.D. Cal. Mar. 19, 2014) (same). The same is generally true for Section 1782 applications brought by private parties. *See, e.g.*, *Mak v. For the Issuance of Discovery in Aid of Foreign Proceeding Pursuant to 28 U.S.C. 1782*, No. C 12-80118 SI, 2012 WL 2906761, at *1-2 (N.D. Cal. July 16, 2012) (denying motion to quash after having granted ex parte application for deposition subpoena under Section 1782).

The court retains wide discretion to grant discovery under Section 1782. *See Intel*, 542 U.S. at 260-61. In exercising its discretion, the court considers the following factors: (1) whether the "person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the



United States District Court
Northern District of California

receptivity of the foreign government or the court or agency abroad to U.S. federal court judicial assistance"; (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome." *Id.* at 264-65; *see also In re Request for Judicial Assistance from the Seoul Dist. Crim. Ct.*, 555 F.2d 720, 723 (9th Cir. 1977) (citation omitted) (noting that the only requirements explicit in the statute are that the request be made by a foreign or international tribunal, and that the testimony or material requested be for use in a proceeding in such a tribunal, but also holding "that the investigation in connection with which the request is made must related to a judicial or quasi-judicial controversy").

"A district court's discretion is to be exercised in view of the twin aims of [Section] 1782: providing efficient assistance to participants in international litigation, and encouraging foreign countries by example to provide similar assistance to our courts." *Nat'l Ct. Admin. of the Republic of Korea*, 2015 WL 1064790, at *2 (citing *Schmitz v. Bernstein Libehard & Lifshitz, LLP*, 376 F.3d 79, 85 (2d Cir. 2004)). The party seeking discovery need not establish that the information sought would be discoverable under the foreign court's law or that the U.S. would permit the discovery in an analogous domestic proceeding. *See Intel*, 542 U.S. at 247, 261-63.

**DISCUSSION**

The Court's inquiry is two-fold. First, whether the applicant has met the statutory requirements of section 1782, and second, whether the *Intel* discretionary factors favor granting the application. The first question here is not in dispute— Mr. Abramowitz does not contest that the statutory requirements are met at least with respect to the cybersecurity patents. However, the parties dispute the second question—whether each of the *Intel* discretionary factors favor granting the application.

**I. Statutory Requirements**

The application meets the statutory requirements set forth in Section 1782. Palantir is an "interested person" because it is the plaintiff in the German Proceedings. Palantir has filed suit to contest Mr. Abramowitz's cybersecurity patents, and although Palantir has not yet filed suit to



United States District Court
Northern District of California

challenge Mr. Abramowitz's healthcare patents, it is within reasonable contemplation.[3] *See Intel*, 542 U.S. at 259. The testimony and documents sought are for use in, and are pertinent to, those proceedings. Finally, Mr. Abramowitz resides within the Northern District of California and is subject to this Court's jurisdiction.

## II. *Intel* Factors

### A. The First *Intel* Factor Favors Granting the Application

The first discretionary factor is whether Mr. Abramowitz is a participant in the foreign proceeding. *Intel*, 542 U.S. at 264. Palantir filed a complaint (the "German Complaint") against Mr. Abramowitz on August 10, 2018. Because Mr. Abramowitz has been served with the complaint in the German Proceeding, he is now a party to that proceeding. Mr. Abramowitz insists that because he is now a party, Palantir can obtain discovery from him in the context of the German proceeding. There is, however, no rule that 1782 applications can only be granted where the party from whom discovery is sought is not a party to the foreign proceeding.

In *Intel*, the Supreme Court stated that "aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant . . ." because "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." *Intel*, 542 U.S. at 264 (emphasis added). While Mr. Abramowitz is a party to the German Proceeding now that he has been served, Palantir has offered evidence that the German court cannot order the discovery sought here. (Dkt. No. 4 at ¶ 12 "under German law, the German Court does not have authority to compel a foreign national residing and/or located outside Germany to appear in a German court to provide testimony"; ¶ 13 "the German Court cannot compel Abramowitz to produce the documents requested from Palantir…the German Court is not authorized to compel a party to the

---

[3] The Court is not persuaded by Mr. Abramowitz's argument that litigation regarding the healthcare patents is not within reasonable contemplation. "Section 1782(a) does not limit the provision of judicial assistance to 'pending' adjudicative proceedings." *Intel*, 542 U.S. at 259 (rejecting view "that § 1782 comes into play only when adjudicative proceedings are 'pending' or 'imminent;'" they need only be "within reasonable contemplation."). Based on Palantir's representation, litigation regarding the healthcare patents is within reasonable contemplation. (Dkt. No. 3 at ¶ 4; Dkt. No. 64 at ¶ 6.)

German Proceeding to submit documents at all, and the documents requested are out of legal reach of enforcement of the German Court.")

Mr. Abramowitz has not offered any contrary evidence, and instead, relies on inapposite out-of-circuit cases. *See, e.g.*, *Andover Healthcare, Inc. v. 3M Co*., 817 F.3d 621, 623 (8th Cir. 2016) (finding that the first factor weighed against granting the application because "the German court had said it would grant Andover's discovery request if necessary to resolve the case"); *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 84-85 (2d Cir. 2004) (noting that the German government had expressly requested that the district court deny the application). While the court in *Via Vadis Controlling GmbH v. Skype, Inc.*, No. 12–MC–193–RGA, 2013 WL 646236, at *2 (D. Del. Feb. 21, 2013), found that the applicant's status as a party in the foreign proceedings weighed against granting the application because the German court could order production of "whatever evidence their laws require," the court cited no authority for the proposition that the German court could in fact order such discovery. Here, in contrast, Palantir has provided a declaration from a German attorney attesting that under German law, the German court cannot order the discovery sought here.[4] (Dkt. No. 4 at ¶¶ 12-13.) Mr. Abramowitz's offer in his supplemental briefing to stipulate that if the German court asks him to produce discovery he will do so ignores Palantir's evidence that discovery in Germany does not work the same way and that a German Court could "only request the submission of documents particularly specified or referred by a party." (*Id*. at ¶ 13.)

"Once a section 1782 applicant demonstrates a need for extensive discovery for aid in a foreign lawsuit, the burden shifts to the opposing litigant to demonstrate, by more than angry rhetoric, that allowing the discovery sought (or a truncated version of it) would disserve the statutory objectives." *Heraeus Kulzer, GmbH v. Biomet, Inc*., 633 F.3d 591, 597 (7th Cir. 2011). Mr. Abramowitz has offered no evidence to rebut Palantir's evidence that the German court could

---

[4] In *In re Ex Parte LG Elecs. Deutschland GmbH*, No. 12CV1197-LAB MDD, 2012 WL 1836283, at *2 (S.D. Cal. May 21, 2012), is thus inapposite because there—unlike here—the moving party had "not explained why that information cannot be obtained from Mitsubishi" given its status as a party in the German action.

not itself order this discovery. Accordingly, the first factor weighs in favor of granting the application.

### B. The Second *Intel* Factor Favors Granting the Application

The second *Intel* factor combines consideration of "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. However, Section 1782 "does not direct United States courts to engage in comparative analysis to determine whether analogous proceedings exist here." *Id.* at 263.

#### ***i) The nature of the German Court and character of the German Proceedings***

In this case, the German Proceedings are patent disputes filed in Regional Court Munich I. According to the German Complaint, Palantir seeks declaratory relief and damages from Mr. Abramowitz. The German Complaint provides the following explanation:

> [Palantir] is therefore faced with a situation in which a non-entitled person filed patents for its inventions, but did not continue the applications with the EPO and the GPTO (German Patent and Trademark Office), so that they are now deemed to have been withdrawn. Accordingly, [Palantir] is not able to file actions for vindication pursuant to Section 8 of the German Patent Act (PatG) or Article II Section 5 of the German Law on International Patent Treaties (IntPatUG), which presuppose the pendency of the European or national patent application.
>
> In order not to be completely deprived of its rights relating to the instant inventions to which it is entitled as the sole authorized party, [Palantir] now wishes to make use of the option provided for in Article 61(l)(b) EPC to file new European patent applications for the same inventions which, under Article 61(2) in conjunction with Article 76(1) EPC, will enjoy the right of priority of the two patents in suit. According to Article 61(1) EPC, this requires a final decision granting [Palantir] the entitlement to the grant of the patents in suit. This is the purpose of the present action for declaratory relief.

(Dkt. No. 4 at 36, Ex. A.) The relevant portions of the European Patent Convention state the following:

> If by a final decision it is adjudged that a person other than the applicant is entitled to the grant of the European patent, that person may, in accordance with the Implementing Regulations:
>
> > (a) prosecute the European patent application as his own application in place of the applicant;



United States District Court
Northern District of California

> (b) file a new European patent application in respect of the same invention; or
> (c) request that the European patent application be refused.

Convention on the Grant of European Patents (European Patent Convention) art. 61(1), Oct. 5, 1973, 1065 U.N.T.S. 255 [hereinafter "EPC"]. The EPC further provides:

> A European divisional application . . . may be filed only in respect of subject-matter which does not extend beyond the content of the earlier application as filed; in so far as this requirement is complied with, the divisional application shall be deemed to have been filed on the date of filing of the earlier application and shall enjoy any right of priority.

*Id.* art. 76(1). Finally, a protocol supplementing the EPC states that "the courts of the Federal Republic of Germany shall have exclusive jurisdiction" when (1) neither the patent applicant nor the challenging party for a European patent is a resident of Europe, (2) the invention was not made by an employee for an employer, and (3) there is no agreement between the parties indicating that a different state contracting to the EPC will have jurisdiction. *Id.*, Protocol on Jurisdiction and the Recognition of Decisions in respect of the Right to the Grant of a European Patent art. 6, Oct. 5, 1973 [hereinafter the "Protocol"]. Thus, to obtain rights to Mr. Abramowitz's abandoned German patents, Palantir must obtain a declaratory judgment from a German court that Mr. Abramowitz was not entitled to those patents and then file a new application for the same invention.

Given the legal framework detailed above, Mr. Abramowitz's argument that the patent disputes can be resolved in domestic courts is unpersuasive. While the California and German Proceedings do involve substantially the same underlying facts and may involve overlapping claims for damages, the German Proceedings are *patent* disputes. The key question before the German Court is which party is entitled to the patents, and that question can be resolved irrespective of the result of the California trade secret litigation. In addition, none of the EPC's exceptions to Germany's exclusive jurisdiction apply: (1) the parties are not residents of Europe; (2) the parties are not, nor have been, in an employer-employee relationship; and (3) the United States is not a contracting state to the EPC. *See* EPC art. 61(1); Protocol art. 6.

***ii) Receptivity of the German Court to U.S. federal-court judicial assistance***

In addition, the Court should consider indications as to whether the German court will be receptive to any Section 1782 assistance. *Intel*, 542 U.S. at 264. As discussed *supra*, there is no

indication as to whether the German court would be receptive to the discovery sought here. There is, however, "no basis to conclude that the German court would be unreceptive to the information requested by [Palantir]." *Cryolife, Inc. v. Tenaxis Med., Inc*., No. C08-05124 HRL, 2009 WL 88348, at *3 (N.D. Cal. Jan. 13, 2009); *see also Heraeus Kulzer, GmbH v. Biomet, Inc*., 633 F.3d 591, 597 (7th Cir. 2011) ("[T]here is nothing to suggest that the German court would be affronted by [the applicant's] recourse to U.S. discovery or would refuse to admit any evidence, or at least any probative evidence (German judges can disregard evidence that would waste the court's time), that the discovery produced."). Thus, "[i]n the absence of authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782, courts tend to err on the side of permitting discovery." *In re Ex Parte App. Varian Med. Sys. Int'l AG*, No. 16-mc-80048-MEJ, 2016 WL 1161568, *4 (N.D. Cal. Mar. 4, 2016) (internal citation and quotation marks omitted).

* * *

The second *Intel* factor therefore favors granting the application. Under European law, Palantir's German patent claims can only be resolved by German courts. While there is no indication that the German court will be receptive the 1782 discovery, there is no indication that it would be hostile to such discovery and the German court is in the best position to make admissibility determinations.

**C. The Third *Intel* Factor Weighs in Favor of Granting the Application**

The third *Intel* factor is whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. Mr. Abramowitz argues that Palantir filed the German Complaint in bad faith and that Palantir's true motive is to gather discovery for use in the domestic proceedings in California, Delaware, and federal courts. The Court is not persuaded.

First, the focus of this factor is on whether the application seeks to circumvent *foreign*—not domestic—proof-gathering restrictions. *See In re Ex Parte Motorola Mobility, LLC*, No. C 12-80243 EJD PSG, 2012 WL 4936609, at *2 (N.D. Cal. Oct. 17, 2012) ("because there is no indication in the record of an attempt to subvert a foreign tribunal's restrictions, the court finds that this factor weighs in favor of Motorola."). Second, in denying Mr. Abramowitz's motion for

an anti-suit injunction of the German Proceedings, the California state court found that the German Proceedings are "wholly distinct" from the California action. (Dkt. No. 43-1 at 13.) Finally, Palantir has agreed to a protective order which limits use of the discovery to the German Proceedings and includes an attorney-eyes-only restriction. (Dkt. No. 65-1.)

This factor thus weighs in favor of granting the application.

**D. The Fourth *Intel* Factor Weighs in Favor of Restricting the Requests**

The fourth *Intel* factor is whether the request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264-65. The Supreme Court noted that such requests may be "trimmed or rejected" at the district court's discretion. *Id.* Since Palantir first filed the application, the parties have met and conferred regarding the scope of documents sought. At the Status Conference, the Court ordered the parties to include details about these efforts and the parties' current positions regarding the scope of the discovery sought.[5] In his supplemental statement, Mr. Abramowitz raises three primary burden objections: (1) the requests seek documents not in his possession, (2) the requests are temporally overbroad, and (3) the requests seek information that should be subject to a protective order. (Dkt. No. 61 at 10-14.)

First, to the extent that Mr. Abramowitz does not have possession of some of the categories of documents sought, he is only required to produce documents in his "possession, custody, or control." Fed. R. Civ. Pro. 45(a)(1)(iii).

Second, while Palantir originally sought documents from January 1, 2007 forward Palantir has revised those dates to January 1, 2013 to February 28, 2018 for the cybersecurity patents and January 1, 2010 to March 30, 2018 for the healthcare patents. Mr. Abramowitz insists that only material created during a five-month period in 2014 is relevant based on "when Palantir alleges to have communicated its inventions to Mr. Abramowitz." (Dkt. No. 61 at 15-16.) However, Palantir contends that it has never asserted that the only communication that occurred between the parties regarding the inventions was on June 1, 2014. To the contrary, Palantir maintains that given its theory regarding Mr. Abramowitz's close relationship and access to its trade secrets, the

[5] Palantir will be held to the narrowed requests it proposed in the parties' last meet and confer. (Dkt. No. 63 at 20.)



United States District Court
Northern District of California

relevant start date is when Palantir commenced work on the technology and the end date is the last day of the month in which Mr. Abramowitz abandoned the specific patent at issue. Mr. Abramowitz counters that, at most, Palantir should be limited to the date range it agreed to in the Delaware action regarding Mr. Abramowitz's alleged theft of trade secrets; there Palantir agreed to an end period of September 30, 2016. But as Palantir notes, that date is based on the filing of the misappropriation action—a date that is wholly irrelevant to the German Proceedings which are based on Mr. Abramowitz's filing of patent applications there. The relevant end date should thus be related to the patent applications. Accordingly, the Court concludes that Palantir is entitled to discovery from January 1, 2013 to February 28, 2018 for the cybersecurity patents and January 1, 2010 to March 30, 2018 for the healthcare patents to test its theories regarding the at-issue patents.

Third, to the extent that Mr. Abramowitz makes relevance objections to the documents sought, these are more properly directed at the German court. *See In re Request For Judicial Assistance from Seoul Dist. Criminal Court, Seoul, Korea*, 555 F.2d 720, 723 (9th Cir. 1977) ("In our judgment our federal courts, in responding to requests, should not feel obliged to involve themselves in technical questions of foreign law relating to subject-matter jurisdiction of foreign or international tribunals, or the admissibility before such tribunals of the testimony or material sought.").

Finally, to the extent that Mr. Abramowitz objects to certain discovery because "Palantir is seeking information that should be the subject of a confidentiality order," Palantir has filed a protective order designed to address his concerns and Mr. Abramowitz has not argued that the protective order is defective in any way. Instead, Mr. Abramowitz maintains that Palantir has not provided assurances that the German Court will respect a protective order issued by this Court. Mr. Abramowitz' argument is misplaced. The protective order binds Palantir and Mr. Abramowitz, both of whom are clearly subject to this Court's jurisdiction. Whether the German Court approves of the restrictions placed on the parties is irrelevant. Further, Palantir has provided evidence—which Mr. Abramowitz has not rebutted—that German courts have strict confidentiality rules and that civil proceedings are not open to the public in the same way they are here. (Dkt. No. 25 at ¶¶ 10-13.)

Accordingly, the Court concludes that with the foregoing limitations, the fourth *Intel* factor likewise favors granting the application.

**III. Mr. Abramowitz's Request for Reciprocal Discovery**

In his supplemental brief, Mr. Abramowitz insists that if the Court is inclined to grant the application that he be allowed to seek reciprocal discovery from Palantir. Palantir responds that it has no objection to reciprocal discovery, but that the discovery it seeks should not be dependent on any such reciprocal discovery because it has not had an opportunity to consider Mr. Abramowitz's discovery requests. There is nothing before the Court regarding the discovery Mr. Abramowitz seeks and the Court cannot rule on the propriety of this discovery in a vacuum. The parties are, however, ordered to meet and confer in good faith to ensure that each side has the discovery necessary for purposes of the German Proceedings.

**CONCLUSION**

For the reasons described above, the Court, in its discretion, GRANTS the 1782 application as set forth above.

Any information produced in response to the subpoena shall be used for the sole purpose of the German Proceedings. Production and use of this discovery is governed by the Protective Order (Dkt. No. 65-1) which the Court separately enters.

The Administrative Motions to Seal which accompanied the parties' briefing on the Section 1782 Application are DENIED WITHOUT PREJUDICE. (Dkt. Nos. 16 & 31.) Mr. Abramowitz seeks to file entire exhibits and *pages* of argument under seal because "the quotes from, and discussions of the substance of, the 2012 Agreement that are reflected in the Opposition and Wohlgemuth Opposition Declaration are confidential." (Dkt. No. 16 at 3:15-17; *see also* Dkt. No. 31 at 1-3.) In support of the motion to seal, Mr. Abramowitz attaches a stipulation signed by the parties wherein the parties stipulate that any materials which discuss or reference the "2012 Transfer Agreement and certain emails shall be filed under seal." (Dkt. No. 16-2.) Under Local Rule 79-5(b) "[a] sealing order may issue only upon a request that establishes that the document, or portions thereof, are privileged, protectable as a trade secret or otherwise entitled to protection under the law (hereinafter referred to as "sealable")." Any such sealing request "must be narrowly

tailored to seek sealing only of sealable material." *Id*. The parties' stipulation fails to show that the exhibits and matters discussed in Mr. Abramowitz's briefs are protectable as trade secrets or otherwise entitled to protection under the law, nor is the request for sealing narrowly tailored. Accordingly, the request for sealing is denied without prejudice to renewal in accordance with Rule 79-5.

This Order disposes of Docket Nos. 1, 16, 31 and 32.

**IT IS SO ORDERED.**

Dated: November 22, 2019

JACQUELINE SCOTT CORLEY
United States Magistrate Judge