UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PALANTIR TECHNOLOGIES INC., <br> Movant, <br> v. <br> MARC L. ABRAMOWITZ, <br> Respondent. | Case No. 18-mc-80132-JSC <br><br> **ORDER RE: PLAINTIFFS' MOTION TO COMPEL** <br> Re: Dkt. No. 81 |

Palantir Technologies Inc. alleges that Marc L. Abramowitz took advantage of his position as an investor and confidant to learn Palantir's trade secrets and file patent applications based on those trade secrets in the United States and Germany. Palantir has filed suit in Germany challenging Mr. Abramowitz's cybersecurity patent applications (the "German Proceedings"). By Order filed November 22, 2019 the Court granted Palantir's application under 28 U.S.C. § 1782 for certain discovery to be used in the German Proceedings. (Dkt. No. 66.) Trial in the German Proceedings is now scheduled for October 15, 2020.

Now pending before the Court is a discovery dispute joint letter regarding Mr. Abramowitz's production of documents in response to the Court's Order. (Dkt. No. 81.) Palantir contends (1) that Mr. Abramowitz has refused to produce documents responsive to Request No. 2(a), and (2) that since the Court's November 2019 order Mr. Abramowitz has waived his attorney-client privilege as to certain communications which therefore must now be produced. After carefully considering the parties' joint submission, the Court concludes that oral argument is unnecessary, *see* N.D. Cal. Civ. L.R. 7-1(b), and DENIES in part and GRANTS in part Palantir's motion to compel.

**DISCUSSION**

**I.      Request No. 2(a)**

Request No. 2(a) requires Mr. Abramowitz to produce all documents "concerning the technology challenged in the [Cyber Patents], including . . . any ideas, inventions, systems, methods, technologies, devices, computer programs, software, products, or concepts that form the bases of the [Cyber Patents] or the technology described therein." (Dkt. No. 3 at 13.) Palantir contends that Mr. Abramowitz did not produce any documents responsive to this request. Nonetheless, in the German Proceedings he has argued that the "concept" underlying the Cyber Patents is derived from his invention of the Bond Patent, a patent not at issue in the German Proceedings. In particular, Mr. Abramowitz explains:

> Defendant filed a patent application regarding his invention to use real-time data to dynamically price bonds. He applied this concept in further patent applications also on cyber insurance, cyber security, drug discovery and other industries where real-time analysis of data could be helpful. That is a strategy that Defendant's patent lawyer— John Squires (to whom we shall return to below) — has used successfully in the past with other inventors whose professional backgrounds lie in business rather than in a technical field.

(Dkt. No. 78-1 at 3 ¶ 3; *see also* 78-1 at 4 ¶ 33 (the concept of the Cyber Patents "was also already the concept of Defendant's earlier application from March 2014"); *id.* at 5-6 ¶¶ 61-68 (explaining that the idea underlying the Cyber Patents came from the Bond Patent and quoting from portions of the Bond Patent).)

Palantir has the bond application—the document upon which Mr. Abramowitz relies in the German Proceedings to show the "concept" or "idea" behind the Cyber Patents. It appears to contend, however, that Request 2(a) covers all documents related to the Bond Patent. The Court is not persuaded. The nature of Palantir's Request 2(a) is that rather than specifically requesting identified documents, it essentially asks Mr. Abramowitz for the documents which he contends reflect the idea, concept or technology for the Cyber Patent. Mr. Abramowitz identifies only the bond application as reflecting the idea or concept for the Cyber Patent.[1] Thus, that is the only

---

[1] He also identifies communications with his patent counsel as discussing the idea behind his Cyber Patents. Those communications are addressed below in the context of the waiver of the attorney-client privilege.

2

1  document responsive to Request 2(a).  The analysis would be different if Palantir had made a

2  section 1782 application seeking the documents underlying the bond application, but that is not the

3  application before the Court.

**II.     Waiver of Attorney-Client Privilege**

Palantir also contends that Mr. Abramowitz has impliedly waived the privilege as to responsive documents that he withheld on grounds of attorney-client privilege.  In particular, Palantir contends that Mr. Abramowitz waived the privilege by using his communications with his patent attorney John Squires in the German Proceedings while at the same time refusing to produce those same communications in the 1782 proceedings.

"The privilege which protects attorney-client communications may not be used both as a sword and a shield. Where a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived." *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992); *see also Apple Inc. v. Samsung Elecs. Co.*, 2015 WL 3863249, at *7 (N.D. Cal. June 19, 2015) ("The [fairness] principle is often expressed in terms of preventing a party from using the privilege both as a shield and a sword … this means that parties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials.").  Mr. Abramowitz, as the party asserting the privilege, bears the burden of proving that the privilege has not been waived. *See Weil v. Investment/Indicators, Research and Management, Inc.*, 647 F.2d 18, 25 (9th Cir. 1981).

Palantir contends that Mr. Abramowitz has put his communications with his patent attorney John Squires at issue "by relying on that correspondence (and by designating his attorney as a witness) to support his inventorship claim at trial and to rebut Palantir's contention that Abramowitz has no documents to demonstrate his invention of the relevant technologies." (Dkt. No. 81 at 3 (citing 78-1 at ¶¶ 154-55 and ¶ 157).)

In his rejoinder in the German Proceedings Mr. Abramowitz wrote:

> In 2013, Defendant and John Squires discussed Defendant's ideas for using dynamic real-time information, in particular to provide dynamic bond ratings. Based upon the inventions discussed at a meeting in November 2013, on March 5, 2014 Mr. Squires initially filed Defendant's first patent application, the application US '766

3

> discussed above in section 2.2.3.
>
> Accordingly, Defendant already had the underlying concept of the Applications in Suit in his hands for a long time and developed this to the subject matter of the priority application together with his patent attorney and the patent attorney's technically qualified staff.
>
> Evidence: Testimony by John A. Squires

(Dkt. No. 78-1 at 9 ¶¶ 154, 155.) Mr. Abramowitz also wrote:

> The documents confirming this development of the subject matter of the Applications in Suit did not have to be disclosed in the Sec. 1782 discovery proceedings since they are subject to the attorney-client privilege. It is incorrect to allege that Defendant did not develop the subject matter of the Applications in Suit himself. Disclosing these documents in the present proceedings could expose Defendant to further abusive procedural claims by Plaintiff in the USA. We are therefore reserving the right to disclose these documents only at the hearing, if necessary.

(*Id.* ¶ 157.)

As a preliminary matter, Mr. Abramowitz does not contest that he can impliedly waive the attorney-client privilege he claimed in this section 1782 proceeding by invoking those same privileged communications in the German Proceedings. That said, the Court finds that Mr. Abramowitz has waived the privilege with respect to the 2013 communications he had with Mr. Squires regarding his "ideas for using dynamic real-time information, in particular to provide dynamic bond ratings." (*Id.* at ¶ 154.) He referred to those communications in his rejoinder and is relying on them to prove that he developed the idea that he contends motivates the Cyber Patents—dynamic real-time information—before meeting with Palantir. Indeed, he admits that Mr. Squire will testify to those communications. (Dkt. No. 81-1 at 9 ¶ 24.) In fairness, Palantir should be privy to any written communications on the same subject to test whether, in fact, in 2013 Mr. Squires discussed that idea with Mr. Abramowitz. Accordingly, to the extent any communications were withheld on privilege grounds they should be produced as responsive to Request 2(a) as Mr. Abramowitz contends they reflect the idea or concept behind the Cyber Patents.

The Court also finds, however, that Mr. Abramowitz has met his burden of showing that he has not waived his other communications with his counsel. After reviewing the rejoinder, the Court agrees with Mr. Abramowitz's characterization of paragraph 157. He is not relying on the

4

communications with his counsel to show inventorship by that paragraph. While the last sentence of paragraph 157 suggests that he may, in the future, rely on those communications to prove his inventorship, if such a last-minute waiver of privilege sandbags Palantir that is a matter for the German court to address, not this Court.

Mr. Abramowitz shall produce any withheld communications in accordance with this Order on or before September 18, 2020.

This Order disposes of Docket No. 78, 79, and 81.

**IT IS SO ORDERED.**

Dated: September 11, 2020

JACQUELINE SCOTT CORLEY
United States Magistrate Judge